CORNELIA A. JENKS v. ESTATE OF EDMUND A. TROWBRIDGE.

*Distribution of decedent's estate.*

Comp. L. § 4309 in providing in subd. 3 for the distribution of the estate of a decedent who has left no widow, children or parent, covers personal as well as real property; but subd. 6, which directs what shall be done with an estate of inheritance where the heir dies unmarried, relates to real property only, and is, in effect, another step in the administration of the ancestor's estate.

The Michigan statute of distributions deals only with the particular estate of the decedent irrespective of its origin or previous ownership; but provisions which relate to the farther disposition of ancestral estates after the death of the heir are mainly to perfect an administration of the ancestor's estate in real property when it has failed in consequence of the heir's death.

One of the distributees of his father's estate died a minor, unmarried and intestate. His mother survived him as did other children of his father. *Held*, that under Comp. L. § 4309 subd. 3 and § 4377 subd. 6 his mother was entitled to share in the personal estate inherited from his father.

Error to Wayne. Submitted Jan. 17. Decided April 12.

APPEAL from disallowance of claim against estate. Claimant appeals. Reversed.

*John J. Speed* and *Wisner & Speed* for plaintiff in error.

*John H. Bissell* for defendant in error.

GRAVES, C. J. This is a writ of error to revise an order of the circuit court based upon a state of facts found and reported by the judge, and the charge of error is that the order is not warranted by the facts. The case is explained by the finding which appears in the margin.*

---

*FINDING OF CIRCUIT JUDGE.

State of Michigan. The Circuit Court for the County of Wayne.

In the matter of the estate of Edmund A. Trowbridge, on appeal of Cornelia A. Jenks.

This is an appeal from the order of the probate court for the county of Wayne, made on the 12th day of May, 1881, denying the petition of the appellant for a share of the estate of said Edmund A. Trowbridge, deceased.

The controversy arises on the last clause of Comp. L. § 4377, subd. 6, prescribing the course of distribution in a class of cases of which this is one. It reads as follows:

"In any other case the residue, if any, of the personal estate shall be distributed in the same proportions, and to the same persons, and for the same purposes, as prescribed for the descent and disposition of the real estate."

Being thus referred to the provisions regulating descent and inheritance we turn thereto and find that the only ones necessary to be quoted are subdivisions 3 and 6 of section 4309. The former, being subdivision 3, and speaking of the person deceased, reads as follows:

"If he shall leave no issue, nor widow, nor father, his estate shall descend in equal shares to his brothers and sisters, and to the children of any deceased brother or sister, by

---

The appeal was taken by the mother of said deceased on the 25th day of June, 1881. The cause was tried by the court without a jury, on the third day of October, 1881.

I find that the facts proven at the trial of said cause are as follows:

1. That Edmund Trowbridge, the father of the above-named Edmund A. Trowbridge, died on the 11th day of February, 1873, leaving his widow, Cornelia A. Trowbridge, (who has since married, and known as Cornelia A. Jenks,) two sons, said Edmund A. Trowbridge, and Charles C. Trowbridge, and three daughters, Martha E. Ames, (formerly Bessie T. Howard,) Kate R. Boothe and Nellie H. Trowbridge.

2. The said Cornelia A. Jenks is the mother of said Edmund A. Trowbridge, and the widow of said Edmund Trowbridge.

3. The said Edmund Trowbridge left an estate which was distributed among his heirs at law, including Edmund A. Trowbridge.

4. That said Edmund A. Trowbridge was a minor at the time of his father's death, and his share of his father's personal estate was delivered to his guardian, Luther S. Trowbridge.

5. That said Edmund A. Trowbridge died on the 11th day of December, 1879, being still a minor, intestate and unmarried. James E. Pittman was appointed administrator of his estate, and the guardian, Luther S. Trowbridge, has rendered his account and paid or delivered over the estate in his hands to said administrator, who has now petitioned for an order for the distribution of the same or a part thereof, among those who by law may be entitled to a share thereof, and said Cornelia A. Jenks, the mother of said Edmund A. Trowbridge, has filed her petition praying that she may be assigned a portion of said estate.

6. That the estate of said Edmund A. Trowbridge which he inherited from his father, or which was assigned to him on distribution of his father's estate, was as follows:

| | | |
|---|---|---|
| Real estate, appraisal value,............................... | $4000 | 00 |
| 720 shares mining stock,.................................. | 349 | 20 |
| 13 shares stock Detroit Savings Bank..................... | 1690 | 00 |
| One note of A. A. Turner, due July 26–29, 1876, and interest, | 4042 | 15 |
| Cash in Detroit Savings Bank............................. | 2881 | 34 |

|  |  |
|---|---|
| $12,962 | 69 |

right of representation: *Provided,* That if he shall leave a mother also, she shall take an equal share with his brothers and sisters."

Subdivision 6 provides that

" If any person shall die leaving several children, or leaving one child, and the issue of one or more other children, and any such surviving child shall die under age, and not having been married, all the estate that came to the deceased child by inheritance from such deceased parent shall descend in equal shares to the other children of the same parent, and to the issue of any such other children who shall have died, by right of representation."

It was found by the circuit court as by the court of probate that the circumstances were such as to subject the share of real estate which came to decedent by inheritance from his father to the operation of this subdivision, and the accu-

---

7. Said mining stocks remained undisposed of and were delivered by the guardian to said Pittman as administrator; that said guardian received as such:

| | |
|---|---:|
| Cash in Detroit Sav. Bank, above mentioned................ | $2881 34 |
| " sale of stock of Det. Sav. Bank,...................... | 1430 00 |
| " Turner note above mentioned and int................ | 4692 00 |
| " from rents of real estate,........................... | 981 47 |
| " dividends of stock of Sav. Bank,.................... | 416 00 |
| " interest on investments made by him,................ | 1334 30 |

$11,735 11

8. That there was paid out by said guardian for taxes, for expenses and services of the guardian, for support, &c., of said Edmund A. Trowbridge, and to him in all, $7211.11, leaving a balance in the hands of said guardian of $4524, of which amount $2000 is represented by a mortgage on lands in Cheboygan and Presque Isle counties, and $2524 in money, and said last-mentioned money has been delivered by said guardian to said James E. Pittman, administrator.

9. That said mining stock above mentioned, said mortgage for $2000, and said sum of $2524 constitute all the estate of said Edmund A. Trowbridge, deceased, excepting the real estate above mentioned, and one hundred shares of stock in the Silver King Mining Company, of the present estimated value of $1900, according to New York stock reports of September 19th, 1881, which last-mentioned stock was purchased by said Edmund A. Trowbridge in person, with moneys that were paid to him as above stated by his guardian.

From the foregoing facts I find as a conclusion of law that Cornelia A. Jenks is not entitled to any portion or share of said estate, the same descending to the brother and sisters of said decedent under the statutes of this State, § 4309 Compiled Laws, which applies directly to this case.

The order of the probate court will therefore be affirmed with costs against the appellant, and said appeal remanded to the probate court.

F. H. CHAMBERS, Circuit Judge.

racy of this conclusion is not questioned. But both courts held further that the last clause of subdivision 6 before quoted, for the distribution of personal property, had the effect to apply this real-estate provision to the personal property which came to decedent in character of distributee and including all items which had become substituted in the course of traffic or had been superadded in the form of gains, and as a consequence of this construction Mrs. Jenks, the mother, was excluded from all participation in her son's estate. This view the administrator sustains here.

The counsel for Mrs. Jenks controvert it and contend first and chiefly that subdivision 6 of the statute providing for real property is not at all contemplated by the last clause of subdivision 6 relating to the distribution of personal property, and that the exceptional provision which allots the particular share inherited from a parent, to the children and grandchildren of that parent, is not in anywise appropriated to the distribution of personal estate. That the reference to the law of descent made in the Statute of Distributions is to the general provisions, and that this case by force of its own circumstances is assigned to the rule given in subdivision 3 before cited, and hence that Mrs. Jenks is entitled to share in the personal estate equally with her children, the brother and sisters of decedent.

The clause of the Statute of Distributions which declares that the personal estate "shall be distributed in the same proportion and to the same persons" "as prescribed for the descent and disposition of the real estate" is not very apt. And whether the purpose was to transfer to the distribution of movable property the rule of succession ordained specifically for ancestral fixed property, or whether it was to have recourse only to the other and general rules governing descent, might naturally produce discussion. Neither view is devoid of reason.

The establishment of the rule relative to ancestral property concedes its justice when applied to land, and if just in respect to land why not in respect to personal property?

The statute nowhere says that movable property shall not be treated as ancestral, and why make a distinction and submit the case to the operation of the sixth subdivision where the property is real estate, and withdraw it when the property is personal? Whatever force may be due to these and other suggestions there are considerations on the other side which preponderate.

We have seen how the right of succession provided for in subdivision 6 (§ 4309) is dependent on specified conditions, and that the presence of all the conditions is indispensable to the right. The "persons" there mentioned can only become entitled to take and be the "persons" prescribed as successors by inheritance in the event that all the conditions exist, and one of these conditions not inferior to any other is that the decedent shall have taken the estate by inheritance. The legal sense is manifest. There is nothing equivocal. The terms of the condition peculiarly appertain to real property and do not fit personalty and no change to extend the meaning to the latter, which might possibly be permitted in some other case, can be allowed here without a gross perversion of sense.

Now had it been intended to prescribe that personal property should be distributed in the event of certain conditions in a way specially exceptional, it is not likely that the conditions intended would have been flagrantly inappropriate to such property and been left to be spelt out of vague generalities. But the Statute of Distributions makes no mention of any exceptional limitations and specifies no condition whatever on which to found one. Such being the case, no authority is perceived for assigning distribution of personalty to a provision ordaining a special rule of succession for real estate and which depends wholly on conditions provided exclusively for real estate and entirely foreign and inappropriate to personal estate. It would seem to be the dictate of reason to regard the fact that the conditions which are required in this real-estate provision are conditions to which personal property is not subject, as enough to exclude that property from the operation of this provision.

A substitution of facts and terms by which personal estate would be signified instead of real, and the idea of distribution would take the place of the idea of inheritance, would be apparently the introduction of a condition not described in the statute, rather than a recognition of one intended to be provided for.

We may next inquire whether the Legislature could have purposed that all movables should be liable to be impressed with the character of ancestral estate; because if that was the purpose as to any it was the purpose as to all. The provision will not permit any distinction. Without here urging the point that if such had been the intention it would presumably have been declared in explicit terms and not been left in any uncertainty, the attention is directed to the nature, uses and modes of handling such property and its vicissitudes of ownership as affording reason for thinking it was not meant to consider it as suitable to be classed in the category of ancestral estate. In all its forms it is subject to constant changes. At a given moment it may be in one thing and at the next in another. Transformations may ensue through buying, selling, exchanging, intermixing, or by accident or through some other cause. It may exist in money or in something else resembling money. The particular form may be utterly destitute of stability or substantially incapable of specific identification. Yet the period for which the character of ancestral property may be retained may exceed twenty years.

The general rule is that distributive rights are not affected by antecedent circumstances connected with the decedent's source of acquisition, but depend on the state of things at his death. *Teague v. Dendy* 2 McCord Ch. 207: 16 Am. Dec. 643.

Is it to be supposed that property so mutable and so difficult to be identified and traced out, as some at least to which the principle must apply, if it apply to any, was intended to be brought within the rule governing ancestral estates? A late ruling of the Supreme Court of Wisconsin is against it (*Kirkendall's Case* 43 Wis. 167) and the view taken is there strongly maintained.

The question may be examined from another point of view. And here it is proper to contrast the provision relative to ancestral estates with the provision for distribution and with especial reference to the leading principles which underlie them.

The Statute of Distributions professes to be occupied with the distribution of the estate of the decedent and no other, and it does not assume to single out any part for a class or to establish any preference among relatives founded on the past history of the property. The act to be done is provided for as a closing step in the settlement and division of the one estate and not as an act having the virtual operation of a step in closing up another and separate estate. The ground consulted is, who ought to succeed the deceased, and not, where the property originally came from. The estate is viewed as though it were an original accumulation by decedent, and whether it came from one or another is allowed no influence.

The provision governing ancestral estates is mainly founded on a different principle. The derivation of the property is made an all-important question with reference to what shall be its destination. The subjects first adverted to are the death of the parent, and the succession of children to his estate and to any share of his estate left under the circumstances described. These matters occupy the foreground of the provision. The mode of approach to the result implies strongly that the Legislature contemplated the particular property as merely a fragment of the estate of the parent, which would remain to be divided on grounds applicable to the parent's estate, and the fact that in ordinary sense it would be the estate of the child was not allowed to control. For the purpose of division among those entitled it is declared a portion of the parent's estate to be newly disposed of, and for the same purpose the parent's estate is considered as still in a course of distribution. *Sheffield v. Lovering* 12 Mass. 489. In the language of Chief Justice Shaw, the statute " is rather giving a new destination to that portion of the parent's estate, which has in some measure failed to accomplish the design of the Legislature by the

premature death of such child, than to provide a new and distinct rule of distribution for such child's own estate." *Nash v. Cutler* 16 Pick. 491.

These considerations lead to the opinion that the two provisions in their spirit and actuating principle are not accordant, and that the chief purpose of one is to resume the disposition of a former estate by taking in hand a portion which has come, as it were, to be derelict and is to be divided as part of that estate; whilst the purpose of the other is to deal with the personal property left by the immediate decedent, as his original estate and not otherwise. In the one case the disposition is in effect closely connected with, if not in essence a part of, the administration of the parent's estate, while in the other the distribution pertains exclusively to the administration of the child's estate.

The conclusion is that subdivision 6 of section 4309 is not applicable and that the case falls under subdivision 3 of that section, and that the courts below were in error in holding otherwise. It will be understood of course that reference is made to the personal estate alone, it being admitted by all parties that the real estate is governed by the provision relating to ancestral property.

Mrs. Jenks is therefore entitled to her proper share of the personal estate under the operation of the last clause of subdivision 6 of section 4377 and subdivision 3 of section 4309.

The present number included in the class is not made certain by the finding, and hence it is not expedient for this court to formulate the requisite order of distribution. The principle being declared the court of probate may readily carry it out.

The order of the circuit court and that of the probate court which it affirmed must be reversed, and the probate court will proceed to make distribution pursuant to the statutes as here explained. Mrs. Jenks will recover her costs of the circuit court and of this court, and this judgment will be certified to both courts below.

The other Justices concurred.