WILLIAM M. KNAPP, EXECUTOR, ETC., v. EMILY KNAPP.

*Husband and wife—Separation agreement—Waiver of interest in estate.*

1. In the absence of proof that the law of another state gives to a widow a distributive share in her husband's personal property, the common law rule, which gives her none, will be presumed to prevail.
2. A widow will not be barred from claiming a distributive share in her husband's personal estate under the laws of this State, by her waiver, in an agreement for separation entered into in another state, of whatever claim she might have as his widow, in case she survived him, under the law of that state, in the absence of proof that the law governing the distribution of personal property is the same in both states.
3. Where after entering into an agreement for separation, by which the wife waived all claim which she might have in her husband's property in case she survived him, the parties become

reconciled, and resume marital relations, the contract is avoided, and the wife becomes entitled to her former rights.[1]

Appeal from Genesee. (Newton, J.) Argued February 15, 1893. Decided May 31, 1893.

Bill to enforce the provisions of a separation agreement, and to enjoin the widow from claiming a distributive share in her husband's personal estate. Complainant appeals. Decree affirmed. The facts are stated in the opinion.

*Durand & Carton*, for complainant, contended:

1. A contract between husband and wife, made in consequence of a separation, and when they have fully decided to separate, without fraud or coercion, and containing suitable provisions for the wife, is valid; citing *Randall v. Randall*, 37 Mich. 563; *Rhoades v. Davis*, 51 Id. 306.

2. If the question were one of divorce, the fact of the parties' cohabiting together after the alleged conjugal misconduct might be most material, but in a case like this, where only property interests are involved, the fact that the parties lived together in the same house for a few weeks after the first separation, and then separated finally, cannot affect the separation agreement; citing *Hollenbeck v. Pixley*, 3 Gray, 526.

3. If the contract is a valid one, and its provisions have not been waived, the husband having performed on his part, equity will enforce performance by the wife; citing *Sullings v. Richmond*, 5 Allen, 187.

4. Where a woman enters into an antenuptial agreement with her intended husband, by which, in consideration of certain things to be done by him, she agrees to release all claims and interests in his estate, the contract can be enforced in equity; citing *Tarbell v. Tarbell*, 10 Allen, 278; *Jenkins v. Holt*, 109 Mass. 261; *Blackinton v. Blackinton*, 110 Id. 461; *Paine v. Hollister*, 139 Id. 144.

*Gold & Johnson*, for defendant, contended:

1. In support of the claim that the separation agreement was avoided by the after-cohabitation, counsel cited Story, Eq. Jur. §§ 1427, 1428; *Shelthar v. Gregory*, 2 Wend. 422; *Kehr v. Smith*, 20 Wall. 31; *Carson v. Murray*, 3 Paige, 501.

---

[1] See *Lansing v. Haynes*, 95 Mich. 16.

HOOKER, C. J. The facts in this cause, briefly stated, are as follows: John Knapp and his wife, Emily, resided in Wisconsin, and on February 9, 1885, executed the following contract upon an agreement to separate:

"*Whereas,* my husband, John Knapp, of Princeton, Wisconsin, has this day secured me the payment of $2,800 by his note and mortgage upon his farm, which sum so secured I hereby acknowledge my fair and just part of the property which we have and hold:

"Now, therefore, in consideration of the said sum so secured, I do hereby release to him, the said John Knapp, all claim, title, and interest in the property owned and possessed by the said John Knapp, and I hereby waive all claim which I may have as the widow of said John Knapp (if I shall survive him) by or under the laws of the state of Wisconsin; and in case of a legal separation between the said John Knapp and myself, the sum so secured by him I hereby accept in lieu of alimony, support, and all other expenses, except I am to have just and liberal support until the 10th day of June next; and, further, I am to have one-half of the beds and bedding in the house, and such few dishes as I may choose to take.

"Witness my hand and seal this 9th day of February, 1885:

her<br>
"EMILY X KNAPP.<br>
mark

"In presence of
          "JOHN SULLIVAN.
          "GEORGE D. WARING."

The mortgage was delivered to Emily, and the parties separated. Proceedings for divorce were commenced September 28, 1885, by the husband, and proofs were taken, but the cause was discontinued in April, 1886. Subsequently the parties met in Michigan, and "lived and kept house by themselves together in Davidson for a few weeks," when they again separated. The husband afterwards made a will, leaving his property, consisting of between one and two thousand dollars' worth of personal property, to a nephew and some nieces, to the exclusion of his wife, stating in the will, as a reason for making no provision for

her, that she had already received the larger portion of his estate. William Knapp, the complainant, was one of the legatees, and was appointed executor of the will. The widow having asserted her claim to an allowance and a distributive share of her husband's estate, the executor filed his bill in the circuit court, in chancery, praying that she be enjoined from claiming any portion of said estate, and upon dismissal of his bill he appealed to this Court.

It may be doubted whether the contract precludes her from receiving a share of her husband's property, as it in terms confines her waiver to such claims as she might have " as the widow of John Knapp *under the laws of the State of Wisconsin*." It does not purport to waive all claims. Whether the law of Wisconsin gives to the widow the same statutory allowance and distributive portion of her husband's personal estate as does the law of Michigan we have no means of determining from this record, and must therefore assume that the common-law rule prevails there, which gives neither. It cannot, therefore, be said that she waived them.

The testimony shows that the parties became reconciled, and lived together for a time, after coming to Michigan. Under many authorities this avoided the contract, and she became entitled to her former rights. Story, Eq. Jur. §§ 1427, 1428; *Shelthar v. Gregory*, 2 Wend. 422; *Kehr v. Smith*, 20 Wall. 31; *Carson v. Murray*, 3 Paige, 501.

We therefore conclude that the defendant was entitled to her full rights in her deceased husband's property, under the law of Michigan.

Counsel for the complainant seem to have proceeded upon the theory that the amount received by her upon separation was an equitable claim against her on behalf of the estate; but we find no authority for such a propo-

sition.   The  decedent  did  not  see  fit  to  require  its
return,  and  though  he  made  mention  of  his  wife  in  his
will,  and  expressed  the  opinion  that  she  had  sufficient,
the  will  did  not  indicate  that  he  made  any  claim  against
her  upon  account  of  it.     If  we  treat  it  as  a  voluntary
gift  (which  is  the  most  that  can  be  claimed),  the  repre-
sentatives  of  the  deceased  cannot  complain  of  it.

Without  saying  that  equity  cannot  entertain  such  a  case
as  this,  we  feel  that  there  is  little  excuse  for  bringing  it
here.     Our  law  (How.  Stat.  § 5964)  gives  to  probate  courts
the  authority  to  make  decrees  assigning  estates  to  those  by
law · entitled  to  the  same.     This  would  seem  to  confer  the
power  to  adjudicate  between  contesting  claimants,  as  was
done  in  the  case  of  *Jenks v. Trowbridge Estate*,  48  Mich.
94.     In  the  present  case  the  complainant's  bill  asks  a
decree  denying  to  the  defendant  a  hearing  in  the  forum
expressly  provided  by  law  for  such  cases.

The  decree  of  the  court  below,  dismissing  complainant's
bill,  will  be  affirmed,  with  costs  of  both  courts  against  the
complainant.

The  other  Justices  concurred.