(115 App. Div. 396)

### DUDLEY v. FIFTH AVENUE TRUST CO.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

1. HUSBAND AND WIFE—SEPARATION AGREEMENT—RECONCILIATION.

Where a wife, as part of a separation agreement, assigned her interest in a policy on her husband's life to him and thereafter a reconciliation was effected, the assignment of the policy fell with the consideration therefor, though the reconciliation agreement made no reference thereto.

[Ed. Note.—For cases in point, see vol. 26, Cent. Dig. Husband and Wife, § 1057.]

2. INSURANCE—LIFE POLICY—MARRIED WOMEN—ASSIGNMENT—CONSENT OF ASSURED.

   Domestic Relation Law, Laws 1896, p. 220, c. 272, § 22, provides that a policy of insurance on the life of any person for the benefit of a married woman is assignable, and may be surrendered to the company by her or her legal representatives with the written consent of the assured. *Held*, that where a husband holding a policy payable to his wife induced her to assign the same to him, but he executed no written consent to such assignment, it was void.

Appeal from Special Term, New York County.

Action by Cassandra H. Dudley against Fifth Avenue Trust Company, as executor of the last will of Augustus Palmer Dudley, deceased. From a judgment for plaintiffs, defendant appeals. Affirmed.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Eldon Bisbee, for appellant.
Leland S. Stillman, for respondent.

SCOTT, J. The plaintiff and one Augustus Palmer Dudley, now deceased, were married on September 14, 1891. In the following October the Equitable Life Assurance Society issued a policy of insurance upon the life of said Augustus Palmer Dudley for a sum payable at his death to plaintiff, if living, and if she were not living to the surviving children, if any, and if there were no children, to said Dudley's personal representative or assigns. On May 26, 1903, plaintiff and her said husband, being then separated and living apart from each other, entered into a written agreement of separation whereby the custody of the children of the marriage were confided to plaintiff, and her husband agreed to pay a certain sum annually for her and their support, and each of the contracting parties agreed to release any and all rights, present and future, in the estate of the other. No reference was made in the separation agreement to the life insurance policy, but, after the agreement had been prepared in duplicate, and one copy had been signed by each party to it, but before delivery, the husband refused to consummate said agreement by delivery thereof, unless the plaintiff would assign to him her interest in said policy, whereupon the plaintiff signed and acknowledged a paper which purported to assign, transfer, and set over all her right, title, and interest in said policy, and all money which may be payable under the same to her husband, Augustus Palmer Dudley. The husband did not at that time, or at any time, consent in writing to the assignment. On June 4, 1904, the parties became reconciled, and reunited, and together signed a document, reciting that fact, and agreeing to cancel, render void and of no effect, the agreement of separation theretofore executed by them, but no specific action was taken, concerning the policy of life insurance. The parties lived together until July 15, 1905, when said Augustus Palmer Dudley died, having paid during his lifetime all the premiums which fell due upon said policy, which was in full force and effect at his death. The present controversy relates to conflicting claims to the amount due upon said policy between the plaintiff as the original beneficiary named therein, and the defendant who is the

executor of Dudley's will. It is urged, and with much force, by the plaintiff · that the rescission of the separation agreement operated to rescind and revoke not only all the mutual covenants and agreements contained in the written contract, but also all acts done and contracts made in consideration of the agreement for separation.

The accepted rule as to the effect of a reconciliation after an agreement of separation is that such reconciliation and a renewal of cohabitation will put an end to all provisions of a separation deed whose scope relates to a state of continuous separation merely, and the rights and interests of each in the other's property will be resumed by inference as of the usual marital status. Schouler on Domestic Relations (1905) § 228. A distinction is urged upon us between these contractual obligations involved in a separation agreement which are executory, and those which are executed, and it is said that while the parties are relieved of the former obligations by the mere fact of reconciliation, the latter can be rescinded only by express agreement to that effect. Even if this distinction be admitted, it may well be doubted if it applies to the facts of this case. If the wife, in consideration of the separation agreement, had conveyed to a trustee, or other person, a piece of real estate, the title and right of enjoyment and possession would have passed at once to the grantee, and would not have reverted by the mere fact of reconciliation, without a reconveyance. The assignment to the husband of an insurance policy upon his life is essentially different, for it carries with it no present right of enjoyment, but merely the right at some future time to collect the amount which may fall due. Since the general effect of a reconciliation is to put the parties, so far as possible, back in the relative positions which they occupied before the separation agreement was made, there is much ground for the contention that the assignment of the wife's interest in the insurance policy, having been made as a condition of the separation agreement, the rights of no third parties having intervened, fell, and became avoided, with the other conditions of the separation agreement, when the parties became reconciled, and resumed cohabitation. The plaintiff's judgment must also be sustained on another ground. Section 22 of the domestic relations law (chapter 272, p. 220, Laws 1896) provides that:

"A policy of insurance on the life of any person for the benefit of a married woman is also assignable and may be surrendered to the company issuing the same, by her or her legal representatives with the written consent of the assured."

It has been consistently held by the courts of this state that no such policy can become assignable without the written consent required by the statute, and that, in the absence of such a written consent, any attempted assignment by a married woman is entirely void, and without effect. Insurance upon the life of a husband, for the benefit of his wife was first authorized in this state by chapter 80, p. 59, of the Laws of 1840, which was entirely silent upon the subject of the assignability of such policies; but, in 1862, it was decided by the Court of Appeals that such a policy was not assignable by the wife. This decision was not based upon any statutory provision, but upon broad

principles of public policy. Eadie v. Slimmon, 26 N. Y. 9, 82 Am. Dec. 395. In 1879, by chapter 248, p. 326 of the Laws of that year, it was provided that such policies might be assigned with the written consent of the husband. In every case which has arisen since the assignability of a wife's policy was first provided for by statute the courts have been inflexible in insisting that the written consent of the husband is indispensable to the validity of such an assignment, and have refused to give effect to any consent, not evidenced by a writing, even where the assignment was sought to be made for the husband's benefit. McCord v. McCord, 40 App. Div. 275, 57 N. Y. Supp. 1049; Rathborne v. Hatch, 90 App. Div. 161, 85 N. Y. Supp. 775. In Anderson v. Goldsmidt, 103 N. Y. 617, 9 N. E. 495, the validity of a wife' assignment was upheld expressly and only because the husband had joined in the assignment, and therefore had, in fact, consented in writing; and in Dannhauser v. Wallenstein, 169 N. Y. 199, 62 N. E. 160, although the case went off on the finding that the policy was not strictly speaking a wife's policy, the court said, in speaking of the law relating to the assignment of a wife's policy:

"The learned Appellate Division * * * held that nothing short of a written consent by the husband would be a compliance with the statute, we concur in this view of the Appellate Division."

In the present case the husband never consented in writing to the assignment of the policy in his wife's favor; and, consequently, that assignment never became operative under the statute. We may not accept any other evidence of his consent, and indeed there is no other evidence in the case, except the mere fact that he insisted that she should execute an assignment to him. By her act alone, however, the assignment was incomplete. It was within his power to make it complete by consenting in writing. He never did so, and we are not to speculate as to the reason for his failure to do so. The fact remains that the statutory prerequisite to a valid and effective assignment was never complied with, and consequently no valid and effective assignment was ever made.

Judgment affirmed, with costs. All concur. INGRAHAM, J., on last ground.