JOHN GASTER ET AL., APPELLEES, V. ESTATE OF FREDERICK GASTER, APPELLANT.

FILED JANUARY 3, 1912.   No. 17,057.

1. **Husband and Wife:** SEPARATION: RECONCILIATION. Reconciliation between and a renewal of cohabitation by husband and wife will abrogate articles of separation theretofore executed by them.

2. **Wills:** ELECTION, TIME OF: INSANE SPOUSE. Section 7, ch. 23, Comp. St. 1911, which provides, in substance, that unless a surviving spouse, within one year after letters testamentary are issued on the estate of a spouse dying testate, files with the county judge a written election to inherit the deceased's estate as though he had died intestate, the survivor shall be deemed to have consented to take under the will and not under the law, will not prejudice an insane spouse for whom the county judge has made no election.

3. ———: ELECTION: INSANE SPOUSE. An oral demand by the guardian *ad litem* of an insane widow, made to the county judge at the time the decree of distribution is entered in the matter of her deceased husband's estate, that she should receive a share of the estate as though the husband had died intestate, if approved by the county judge, constitutes an election for her by him and is sufficient to sustain her rights under the law.

37

APPEAL from the district court for Cuming county: GUY T. GRAVES, JUDGE. *Reversed with directions.*

P. M. *Moodie* and John J. *Sullivan,* for appellant.

A. R. *Oleson, contra.*

ROOT, J.

This is an appeal from a judgment of the district court for Cuming county denying Theresa Gaster any interest in the estate of her deceased husband.

This controversy grows out of a contract between Frederick Gaster, the deceased, and his widow, who is now insane. The evidence is not so satisfactory as we might desire, but the record discloses that some time preceding April 30, 1881, Frederick Gaster, a widower, and Theresa Gaster, a widow, each having children by a former marriage, became husband and wife. On the day last mentioned these parties signed a contract as follows:

"Memoranda of articles of separation, and agreement of property settlement made and concluded this 30th day of April, A. D. 1881, by and between Frederick Gaster and Theresa Gaster (husband and wife) of the county of Cuming and state of Nebraska, witnesseth as follows, to wit:

"It· is hereby specially agreed by and between said parties that from the signing of this agreement said parties will live separate and apart from each other, and each for themself promises and agrees not to interfere or ·meddle with the personal actions of the other, and each is hereby empowered to follow their course of life the same as if no marriage relation existed between them, and no control shall be used by either over the actions of the other.

"It is hereby agreed by said parties that the said Frederick Gaster hereby releases all rights, interest, claim, demand and privileges in or to any or all the real estate

or personal property now owned by said Theresa Gaster (as her own personal estate) as well as any and all personal property which the said Theresa Gaster may in the future acquire.

"The said Theresa Gaster hereby covenants and agrees that she the said Theresa Gaster by these presents hereby releases all rights, interest, claims, demands, privileges and dower in and to any and all the real estate and personal property now owned by said Frederick Gaster as well as to any and all property which the said Frederick Gaster may in the future acquire.

"It is further agreed that said Theresa Gaster shall alone be entitled to the possession of the farm owned by her in said county and the said Frederick Gaster to be alone entitled to the possession of the farm owned by him, and it is agreed that this shall be a full, complete and entire settlement of the property real and personal owned by said parties, and to be acquired by either of them in the future.

"The said Frederick Gaster hereby covenants and agrees that the said Theresa Gaster shall have the right and privilege to remove from the farm of the said Frederick Gaster all the personal property, furniture, paraphernalia and goods owned by the said Theresa Gaster, brought by the said Theresa Gaster to said Fred Gaster at the time of their marriage, and also the right to remove all personal property acquired by said Theresa Gaster since said marriage.

"It is hereby agreed by and between said parties that said Theresa Gaster shall be entitled to the possession of Theresa Maria Gaster, aged two years, born to said parties during said marriage, and it is hereby agreed that said Frederick Gaster at all reasonable times shall have the right to visit and see his said child, and make such provision for said child as to him the said Frederick Gaster may deem just. That when said child shall arrive at the age of ten years she shall have the right to choose between said parents. After said choice either

of said parties shall have the right to see said child as above.

"Signed this 30th day of April, 1881.

"In presence of

"T. M. FRANCE.                    F. GASTER.
"JEROME VOSTROSKY.            THERESA GASTER."

The execution of this contract was acknowledged before a notary public. The parties did not separate, but continued to cohabit as husband and wife, and in 1884 another child was born to them. In 1886 Theresa Gaster was adjudged insane and committed to one of the state hospitals for the insane, where she is still restrained of her liberty. On July 23, 1892, the contract was recorded in the office of the register of deeds of Cuming county. In 1901 Frederick Gaster executed his last will and testament, wherein and whereby all of his property is devised to his children, and no provision is made for his widow. In 1908 Gaster departed this life, and this will was subsequently admitted to probate in the county court of Cuming county. The contract was filed in the county judge's office at the time the will was probated. The estate has been administered. In March, 1910, in the decree of the county court of Cuming county distributing the residue of the personal property, one-fourth of the estate is adjudged to belong to the widow. At no time did the guardian of the insane woman, or any one in her behalf, file in the county judge's office an election that she would take an interest under the law in the estate of her deceased husband, or renouncing the will, but the guardian *ad litem,* before the decree of distribution was entered, orally stated to the county judge that he demanded for the insane woman one-fourth of her deceased husband's estate. The district court on appeal held that by the terms of the contract the widow "released all right, interest, claim, demand, privileges and dower in and to any and all of the real estate and personal property then owned by the said Frederick

Gaster, as well as to any and all property which the said Frederick Gaster may in the future. acquire," and vacated the order of the county court.

We find little, if anything, in this contract to merit the approval of the law. It will be observed that the husband makes no provision for the support of his wife, nor yet for that of his infant child. At the time the writing was signed Gaster had no expectant interest in his wife's estate that could not have been cut off by her will. He had absolutely no right to control her property or to receive any part of the rents or profits therefrom, while she, by reason of the marital relation, had an inchoate dower estate in his lands which he could not bar without her deed, and a life estate in the homestead, if one existed. She also had the right to maintenance and support during her husband's life, and after his death, should she survive him, was entitled to liberal allowances by way of maintenance, and, if he died intestate, would be entitled to share in the distribution of his personal property. This right before his death was enlarged by legislation. We would be surprised to learn that such a contract had received judicial sanction in a court of last resort. But, however that may be, if it be conceded for the sake of argument that the contract was valid in its inception, it was abrogated by the subsequent conduct of the parties, and all of their marital rights were thereby restored. The controlling principle is ancient, and, so far as we are advised, has been enforced in an unbroken line of decisions wherever its integrity has been questioned. *St. John v. St. John*, 11 Ves. Jr. (Eng.) *526, *536; *Angier v. Angier*, Gilb. Rep. (Eng.) 152, 25 Eng. (reprint) 107; *O'Malley v. Blease*, 20 Law T. Rep. n. s. (Eng.) 899, 17 Weekly Rep. (Eng.) 952; *Nicol v. Nicol*, 55 Law J. Ch. n. s. (Eng.) 437. The last case is peculiarly in point, because the wife, after deeds of separation had been executed, cohabited for a short time with her husband, and subsequently became insane, and it was held that the deeds were annulled by the resumption of

marital relations. See, also, *Kehr v. Smith,* 20 Wall. (U. S.) 31; *Shelthar v. Gregory,* 2 Wend. (N. Y.) 422; *Smith v. King,* 107 N. Car. 273; *Stebbins v. Morris,* 19 Mont. 115; *Knapp v. Knapp,* 95 Mich. 474. In the instant case, not only were the marital relations uninterrupted, but a child was born subsequent to the execution of the contract. The fact that the instrument was filed for record six years after the wife became insane suggests the thought that the husband adopted a doubtful expedient in an attempt to relieve his property from this helpless woman's lawful demands. But, irrespective of motives, the instrument, in the circumstances of this case, is null and void.

It is argued, however, that since no election to take under the law was filed in the office of the county judge, and more than one year elapsed between the date of the letters testamentary and the entry of the decree of distribution, the widow is not entitled to the benefit of sections 1, 6, 7 and 176, ch. 23, Comp. St. 1911, which provide for the descent and distribution of the estates of deceased persons, and permit the widow, within one year after letters testamentary issue, to renounce the provisions of the will and take under the law. If it be conceded that the duty to elect exists and should be exercised by a widow for whom no provision is made in the will, we think that section 7, *supra,* which relates to time, does not bind an insane surviving spouse while in that mental condition. In the case at bar, the fact that the widow was insane having been made known to the judge, it was his duty to order such an election as would best protect her interests. While a formal election was not made, the oral demand of the guardian *ad litem* for one-fourth of the testator's estate was treated by the judge as his own act, became so by adoption, and was sufficient to protect her rights in the premises. The admission of the will to probate established only its due execution. So far as her interest in the real estate may be concerned, the order of the probate court would not prejudice her rights as against the devisees.

The judgment of the district court, therefore, is reversed and the cause remanded, with directions to affirm the judgment of the county court.

REVERSED.