# HAILE v. HALE.

No. 3670. Opinion Filed September 9, 1913.

Rehearing Denied November 4, 1913.

(135 Pac. 1143.)

1. **MARRIAGE—Validity—Presumptions.** Where a marriage has been consummated in accordance with the form of the law, the law indulges a strong presumption in favor of its validity.

2. **SAME—Burden of Proof.** One who asserts the invalidity of such a marriage, because one of the parties thereto has been formerly married, and the spouse of such former marriage is still living, has upon him the burden of proving that the first marriage has not been dissolved by divorce or lawful separation.

3. **HUSBAND AND WIFE—Separate Maintenance—Abrogation of Contract.** A contract between a husband and wife for separation and for separate maintenance of the parties thereto, which in consideration of such separation and the conveyance of certain property of each to the other releases the other from all claims and demands for support in and to his or her property, is abrogated by the reconciliation and cohabitation of the parties thereto.

4. **EXECUTORS AND ADMINISTRATORS — Widow's Allowance.** Where, after the execution of such a contract of separation, the parties thereto become reconciled and live together and cohabit as man and wife, upon the decease of the husband, the surviving wife, where the personal property directed by the statute to be set aside to the widow is insufficient for her support, is entitled to such an allowance out of the estate of the deceased husband as in the discretion of the court may be reasonable for her maintenance during the progress of the administration of the estate.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County;*
*James B. Cullison, Judge.*

Action by Julia A. Hale against Nathan T. Haile, executor of the estate of John R. Hale. Judgment for plaintiff, and defendant brings error. Modified and affirmed.

This cause originated in the county court of Kingfisher county. On March 29, 1911, defendant in error filed in that court in the probate proceeding of the estate of John R. Hale, deceased, her petition for an allowance from said estate. In

her petition she alleged that she was the widow of decedent; that the appraised value of the estate was $5,305.85, but that the property of the estate is worth nearly twice its appraised value; that the debts of the estate do not exceed $1,000; that the amount of personal property exempt from execution is insufficient to support her; that an allowance was necessary for her maintenance as the widow of decedent; and that the sum of $75 per month would be a reasonable allowance for that purpose, and she prayed for an order therefor.

Plaintiff in error, an executor of the estate of John R. Hale, deceased, thereafter filed an answer to said petition wherein he objects to the allowance prayed for and as his defenses thereto alleged: First, a general denial; second, that Julia A. Hale is not the widow of John R. Hale, deceased, for the reason that she was never legally married to him; third, that, if she had been legally married to him, she was not legally entitled to a widow's allowance for the reason that prior to the death of deceased, and on the 22d day of October, 1910, defendant in error entered into a written contract in settlement of their property rights, by virtue of which defendant in error received certain real and personal property from decedent, and whereby she agreed to release decedent from all claims and demands that she might have or claim to have against him by reason of their pretended marriage relationship, and whereby she agreed that, from the date of the execution of said contract, she should have no claim or demand against decedent, nor right, claim, or demand in and to his property, and alleged that such written contract was fully performed by the parties thereto.

A trial to the county court resulted in findings of fact in favor of defendant in error and an order granting to her an allowance of $40 per month out of the estate for maintenance during the progress and settlement of the estate; such allowance to begin to run from the date of admitting the will of deceased to probate. From this order an appeal was prosecuted to the district court, where, upon trial *de novo,* the findings of fact were again in favor of defendant in error and the same order for allowance made that was made in the county court. To re-

verse this order of the district court this proceeding in error is prosecuted.

*Hinch & Bradley,* for plaintiff in error.

*F. L. Boynton* and *Robberts, Curran & Otjen,* for defendant in error.

HAYES, C. J. (after stating the facts as above). The principal controverted issues at the hearing of the district court were: First. Was defendant in error ever legally married to decedent? Second. Was the contract in settlement of property rights alleged in plaintiff in error's answer, the execution of which is admitted, annulled by the acts and conduct of the parties after the execution thereof? Third. Is defendant in error in need of an allowance, and, if so, the amount thereof?

The evidence establishes the issue of a marriage license by the proper authorities of Sedgwick county, Kan., on the 22d day of December, 1906, authorizing the marriage of decedent and defendant in error; and that decedent and defendant in error were on said date married under formal ceremony. Plaintiff in error attempted to establish the invalidity of this marriage by showing that at that time defendant in error was the wife of one John Shugart. In support of this contention, the evidence establishes that for several years defendant in error and one John Shugart lived together and cohabited in the state of Illinois and held themselves out to the public as man and wife; that defendant in error had by said John Shugart four children; that during the time she lived with him she bore his name; and that all of her children took the surname of Shugart. Defendant in error left Shugart about the year 1866, after the birth of her children, and was gone about two years, when she returned in the neighborhood in which she had formerly resided with Shugart. During that time Shugart had remarried. Defendant in error afterwards married a man by the name of Board, who subsequently died before she married Hale. Upon being introduced as a witness by plaintiff in error, she testified that she had never been married to Shugart. Counsel for plaintiff in error thereupon asked her several questions, the purpose

of which was to establish a common-law marriage between her and Shugart. An objection to said testimony was sustained; and the action of the court in rejecting this testimony constitutes one of the assignments of error urged for reversal. But, since we may assume that the evidence establishes a common-law marriage between defendant in error and Shugart, and that fact alone does not require a reversal of the order appealed from, although the trial court committed error in rejecting the testimony, such error was without prejudice. And we shall, for the purpose of deciding all the questions presented by this proceeding, assume that there was a common-law marriage between the defendant in error and Shugart. The evidence also establishes that, at the time defendant in error married Hale, Shugart, her former husband, was still living; but the facts that defendant in error had been formerly married and that the husband of her first marriage was still living are not sufficient to render her marriage to Hale invalid.

Where a marriage has been consummated in accordance with the forms of the law, the law indulges a strong presumption in favor of its validity. *Re Rash,* 21 Mont. 170, 53 Pac. 312, 69 Am. St. Rep. 649; *Tuttle v. Raish,* 116 Iowa, 331, 90 N. W. 66; *Wenning et al. v. Teeple et al.,* 144 Ind. 189, 41 N. E. 600.

One who asserts the invalidity of such a marriage, because one of the parties thereto has been formerly married, and the spouse of the former marriage is still living, has upon him the burden of proving that the first marriage has not been dissolved by divorce or lawful separation. *Clarkson et al. v. Washington et al.,* 38 Okla. 4, 131 Pac. 935; *Coachman v. Sims et al.,* 36 Okla. 536, 129 Pac. 845; *Scott v. Scott,* 77 S. W. 1122, 25 Ky. Law Rep. 1356; *Pittinger v. Pittinger,* 28 Colo. 308, 64 Pac. 195, 89 Am. St. Rep. 193. Numerous other authorities supporting this doctrine may be found referred to in the note to *Smith v. Fuller,* 16 L. R. A. (N. S.) 98.

Defendant in error testified that she had never obtained a divorce from John Shugart, her first husband; that she did not think it was necessary. She does not testify as to whether he obtained a divorce from her and by such divorce their marriage

relations were dissolved. Plaintiff in error, in an effort to discharge the burden of proof upon him, introduced the depositions of the clerks of the circuit courts of Fulton, Traswell, and Peoria counties of Illinois and of Kaufman county, Tex., which courts were shown to have jurisdiction of all divorce proceedings in their respective counties from the time of the separation of defendant in error from her first husband, John Shugart, until the time of her marriage to Hale. These depositions were to the effect that no divorce had been granted to John Shugart by the courts of which said witnesses were clerks. The evidence establishes that during this time Shugart lived in the counties of Illinois named, and that he lived near a certain town in Texas, located in Kaufman county. The evidence does not establish that he ever lived in Kaufman county; and it appears from the location of the town named in that county that he could have lived near it and still resided in another county. Nor does the evidence establish that the counties named in the depositions are the only counties in which Shugart resided during said time, or that said courts were the only courts that would have had jurisdiction to grant him a divorce. The evidence establishes that, about two years after defendant in error separated from Shugart, she returned to the community where they had theretofore lived as man and wife. Shugart was then residing in the same community with his second wife, whom he had married in that community. It does not appear that any prosecution was ever made against Shugart for bigamy, and thereafter defendant in error married a second husband with whom she lived a number of years before his death. Her first husband, Shugart, moved to Texas, taking with him his second wife and his children by her, where he lived with them until his death. To hold that defendant in error's marriage to Hale is invalid would be to make Shugart's relation to his alleged second wife bigamous, his two children born by her bastards, and defendant in error's second marriage illegal. So far as it appears from the evidence in this record, the parties to all these marriage contracts have lived together during the lifetime of the respective parties under the impression that they were lawfully married. Defendant in error

and Mr. Hale lived together in such relation about four years before his death. The stability of descent and distribution, the rendering illegitimate innocent children upon such facts as are presented by this record, establishes the wisdom of the presumption that sustains the validity of a marriage contracted under the forms of the law; and we are of the opinion that the trial court did not err in his finding to the effect that this presumption had not been overcome.

Under the statutes of this state, upon the death of the husband, the homestead and certain personal property are required to be set aside to be occupied and used by the widow and children, or either. Sections 5265 and 5266, Comp. Laws 1909 (Rev. Laws 1910, secs. 6328, 6329). If the personal property ordered to be set aside is insufficient for the support of the widow and children, or either, and if there be other estate of the decedent, the court in its discretion may make a reasonable allowance out of the estate for the maintenance of the family, according to their circumstances, during the progress of the administration. Section 5269, *Id.* But plaintiff in error here contends that, although the defendant in error be the widow of the deceased, she is estopped from claiming any allowance as his widow under said statute because of the contract of separation set up in his answer. Prior to the 22d day of October, 1910, the date of the contract of separation, defendant in error and her husband had unpleasant difficulties and domestic troubles resulting in a proceeding for divorce by defendant in error, which was pending on that date. On said date they entered into a contract whereby they agreed to separate and live apart. The contract recites that because of said separation it was to the interest of the parties to effect a settlement of all property rights and all claims that either might have against the other. By the next provision of the contract, decedent agrees that he will sell, transfer, and convey to defendant in error, his wife, a certain half section of land in Kingfisher county and also sell and convey to her certain personal property; and by the next provision of the contract defendant in error accepts said property in full satisfaction of any claim, right, or demand that she may have against her husband for alimony,

and releases him from any right, claim, or demand that she may have or claim to have by reason of their marriage relationship; another provision of the contract recites that, as a further consideration for the property conveyed by the husband, the defendant in error agrees to deed and convey to him certain real estate situated in the city of Kingfisher and execute to him a note for the sum of $2,600, secured by a mortgage on the half section of land conveyed by him to her, due and payable five years after date. Following the foregoing provision of the contract, it is provided that, from and after that date, neither party to the contract shall have any right, claim, or demand against the other thereto or to any of his or her property; and it is agreed that the divorce proceeding shall be dismissed by the defendant in error at her costs. Relative to this transaction, the court found that, prior to the marriage of the defendant in error and decedent, she owned and possessed the half section of land mentioned in the contract; that $1,500 of the purchase price of said land had been borrowed from her by decedent; that shortly before their marriage she deeded said land to said decedent; that a few years after their marriage they selected and improved said land as a homestead. He also finds that prior to their marriage defendant in error owned the real estate mentioned in the contract of separation, consisting of town lots and improvements thereon of the value of about $1,600, and that she also owned certain personal property; he finds that the contract mentioned was executed by them, and that the deeds of conveyance therein mentioned were executed in accordance with the terms of the contract, but finds that, immediately after entering into said contract, decedent expressed himself as having done something that he could not tolerate and directed his wife to go to the grocery store and buy groceries, and that they returned to their home on said half section of land; that they lived together and cohabited as husband and wife until decedent's death, which occurred on the 10th day of the following January. Shortly after their return to their home, decedent became ill and was confined to his bed until his death, during which time defendant in error was constantly by his bedside, administering to his

wants and attentively caring for him.  As a conclusion of law, the court held that, by the reconciliation and the living together and cohabiting as man and wife, the contract of separation and settlement was nullified.

By the statutes of this state it is made the duty of the husband to support himself and his wife out of his property or by his labor.  The wife must support the husband, when he has not deserted her, out of her separate property when he has no separate property and he is unable from infirmity to support himself.  Section 3643, Comp. Laws 1909 (Rev. Laws 1910, sec. 3351).  But neither has any interest in the property of the other, except as above mentioned.  No estate is allowed the husband as tenant by curtesy upon the death of his wife; nor is any estate in dower allotted to the wife upon the death of her husband.  Sections 3644, 3649, Comp. Laws 1909 (Rev. Laws 1910, secs. 3352, 3357).

Section 3646, *Id.,* specifically authorizes a husband and wife to agree in writing to an immediate separation and makes provision for the support of either of them and the support of their children during such separation.  It is plain from the provisions of the contract here involved and all the circumstances surrounding its execution that these two aged people, having come to the conclusion that they could no longer live together peaceably and happily, intended by contract to relieve the husband from the obligation then existing upon him by statute to support and maintain his wife out of his property and to relieve the wife from the contingent liability imposed upon her by statute to support the husband out of her property, if he should ever become impoverished and unable from infirmity to support himself.  The deeds and the note and mortgage mentioned in the contract were executed at the time of the execution of the contract, but immediately after leaving the office of the attorney, where the contract was executed, they agreed that they could not carry it out; that they both would be unhappy separated from each other; and they returned to their home again to live together as man and wife.  The primary consideration upon which the

contract was made and the cause of its execution, established by the recital of the contract, did not any longer exist.

There is practically no dissent among the authorities that a contract of separation and for separate maintenance of the wife is abrogated by the reconciliation and cohabitation of the parties thereto. *Zimmer v. Settle et al.,* 124 N. Y. 37, 26 N. E. 341, 21 Am. St. Rep. 638; *Dudley v. Fifth Avenue Trust Co.,* 115 App. Div. 396, 100 N. Y. Supp. 934; *Hitner's Appeal,* 54 Pa. 110; *Knapp v. Knapp,* 95 Mich. 474, 55 N. W. 353; *Smith v. King,* 107 N. C. 273, 12 S. E. 57; *Archbell v. Archbell,* 158 N. C. 408; *Coe v. Hill et al.,* 201 Mass. 15, 86 N. E. 949; *Gaster et al. v. Gaster,* 90 Neb. 529, 134 N. W. 235; *Chapmen v. Gray,* 8 Ga. 341; *Hendrick v. Hendrick,* 4 Ky. Law Rep. 724; Schouler's Domestic Relations, sec. 218.

The authorities are numerous wherein the executory features of such contracts of separation have been held avoided between the parties by a subsequent reconciliation; but we have been able to find but few decisions in which the effect of such reconciliation upon the parts of the contract which have been executed was involved. In *Hendrick v. Hendrick, supra,* after the wife had received all that she had agreed to receive in full settlement of all her claims for alimony, support, and maintenance, there was a reconciliation and a subsequent separation and proceeding for divorce. It was held that, the contract for separation having been fully executed prior to the separation, the wife would be held to account for the value of the property received by her under it, deducting a reasonable support out of it during the separation.

In *Knapp v. Knapp, supra,* the wife, by agreement of separation, had received a large sum of money. Afterwards there was a reconciliation and a second separation. The husband upon his death left a will, wherein he made no provision for his wife, and as a reason therefor stated that she had already received a large portion of his estate. The widow asserted her claim to an allowance and a distributive share of her husband's estate. The court held that the fact that she had received a large amount upon her separation was not an equitable claim

against her on behalf of the estate and said that at most the payment of said sum to her by her husband, in view of the subsequent reconciliation, should be treated as a gift, of which the representatives of the deceased could not complain.

In *Hartl v. Hartl* (Iowa) 135 N. W. 1007, the facts were that the husband and wife during their marriage had accumulated considerable property, consisting of about 260 acres of land and personal property of the value of $4,000. By an agreement of separation, all the property, both real and personal, was granted to the wife, except the husband's wearing apparel and the sum of $2,000, paid to the husband by the wife. Shortly thereafter there was a reconciliation. They lived together for a short time, when a second separation occurred and a proceeding for divorce and division of the property was' instituted by the husband. The court held that by the reconciliation the contract granting the personal and real propetry to the wife was avoided and, in granting a divorce to the wife upon her cross-petition, divided the property between them, assigning a portion of the real estate to the husband and a portion of it to the wife.

*Roberts v. Hardy*, 89 Mo. App. 86, also seems to be in point. By the deed of separation the wife received the sum of $1,000 in cash, which the husband thereafter invested for her in a 40-acre farm near their former residence. They afterwards became reconciled, and the husband lived with her on the farm purchased with the $1,000 received from him. By the contract of separation the wife accepted the sum of $1,000 in lieu of her dower or homestead right in the property of her husband, and relinquished all claims of whatever character or description, and released him from all charges of maintenance and support. Upon the death of the husband, she made application for an allowance as his widow for the period of one year, pending the administration of the estate under the provisions of the statute of Missouri, authorizing such allowances to the widow of a deceased husband. In sustaining her application, the appellate court said:

"When the husband sent for his wife and brought her to his home, and afterwards lived with her in the house purchased by the money he had paid her, he received her to his arms as his wife, and by those acts he repudiated the deed of separation and all its incidents, and he thereby clothed his wife with all the rights pertaining to the relation of marriage as if no deed of separation had ever been."

It is true in the instant case that the release of these parties of all claims against the other for maintenance and support constitutes not the only consideration for the execution of the conveyances made by them, but this consideration was the predominant consideration and is so involved in the transaction that it is impossible to separate them and as a result the reconciliation, in our opinion, invalidated the agreement between them. When the reconciliation occurred, which was only a few hours after the execution of the contract and deeds, neither of the parties had incurred any expense for which the other would have been obligated had the contract of separation not been made and release from which the execution of said agreement and conveyances therein named sought to effect. It is clear from all the circumstances surrounding this transaction that the parties deemed that the troubles between them were not so serious as they had thought; that their welfare and happiness would be promoted by their continuing to reside together as man and wife, as they had done theretofore; and that they intended by their acts to restore each to the same position and relation toward the other that existed before the execution of the contract and deed a few minutes before. The consideration for the agreement had failed, and the most that either party received or could hold by virtue of the deeds of conveyance is the mere legal title to the property involved. In equity the right and title to these different pieces of property remained in its former owner; and in equity and good conscience each, upon demand of the other, would be required to reconvey it to the real owner.

We have not been called upon in this case to decide what would be the effect had a long time elapsed between the execution of the agreement of separation and the reconciliation, and ex-

penditures had been made by one of these parties of money for his or her support and maintenance which would have been the duty and obligation of the other to expend, had the separation not occurred; nor do the facts in this case bring it within the doctrine of the case of *Kehr v. Smith,* 20 Wall. 31, 22 L. Ed. 313, and in *Re Singer's Estate,* 233 Pa. 55, 81 Atl. 898, Ann. Cas. 1913A, 1326. In each of these cases, upon a reconciliation of the parties, there was a specific agreement that the portion of the agreement of separation in each case that affected property rights of the parties should stand and not be affected by the reconciliation. The articles of separation were by the court in these cases sustained, in so far as they dealt with the property rights, notwithstanding the subsequent reconciliation.

The trial court in the instant case held that the deeds of conveyance are void and adjudged that the same be canceled. We think that the trial court erred in rendering judgment canceling these deeds in this proceeding, for the reason that, if the trial court had jurisdiction of the subject-matter, the sole relief sought by the application of defendant in error was an allowance, pending the administration of the estate, and all that plaintiff in error sought by his answer was to resist and defeat this allowance. The cancellation of the deeds of conveyance was not a relief prayed for by either party, nor within the issues presented by the pleadings to the lower court. For these reasons, at least, the lower court was without jurisdiction to enter its decree of cancellation.

It is also contended that the allowance made is too large. After reviewing the evidence, we are of the opinion that this contention is without merit.

The judgment of the trial court, modified in accordance with the foregoing conclusions, is affirmed.

All the Justices concur, except KANE and LOOFBOURROW, JJ., not participating.