## AHRENS v. AHRENS.

No. 8406—Opinion Filed Dec. 24, 1917.

(169 Pac. 486.)

(Syllabus.)

1. **Husband and Wife—Separation Agreement—Rescission—Cohabitation.**

Where the parties to a contract of separation cohabit and live together as husband and wife, by mutual consent, for ever so short a time, the contract will be considered as rescinded. For when a man insists on renewing the more delicate right of the marital relation, he puts himself out of court, in so far as enforcing his contract of separation is concerned.

2. **Divorce—Custody of Children—Alimony.**

Where a wife with minor children is granted a divorce, on account of the fault of the husband, and awarded the care, custody, training, and education of the children, equity will also award her such alimony as under all the conditions justice and fairness may demand.

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by Edna Ahrens against Martin Ahrens for divorce and alimony. Divorce granted, and alimony denied. Judgment denying alimony reversed and remanded, with directions.

W. J. Davidson, for plaintiff in error.

Reardon & Hereford and Everest & Campbell, for defendant in error.

BRETT, J. This action was commenced in the district court by plaintiff in error, as plaintiff, against the defendant in error, as defendant, for divorce and alimony, and for a cancellation of a contract of separation, previously entered into by and between the parties. The trial court granted the divorce, on the ground of extreme cruelty; but refused alimony, on the ground that the contract of separation was valid and binding, and settled the property rights of the parties. The plaintiff appealed from the judgment upholding the contract of separation and refusing alimony.

The pleadings and evidence are voluminous, but the decisive question involved in this appeal is whether or not the contract of separation was in force and binding at the time of the commencement of this action. The material part of the contract between Martin Ahrens, first party, and Edna Ahrens, second party, is:

"That for and in consideration of the stipulations hereinafter written, party of the first part agrees to and with party of the second part, to pay the sum of five hundred dollars to party of the second part, the receipt of which is hereto acknowledged; now, in consideration of the stipulation above written, party of the second part agrees to and with party of the first part to relinquish to party of the first part all her right, title, and interest in and to lot No. 17, in block 37, in Oklahoma City, O. T.; also all

her right, title, and interest in and to any and all real and personal property; that she has by reason of her marriage to said party of the first part, and all property that he may acquire in the future. In addition thereto she relinquishes all the right that she now has of party of the first part of her and her two minor children's support and maintenance, and agrees to support and maintain at her own expense herself and her two minor children, the fruit of their marriage."

Mrs. Ahrens, by the terms of this contract, also relinquished her right of dower, the homestead right, etc., and the parties agreed to live separately and apart; Mr. Ahrens only reserving "the right to occasionally visit and see their two children." The children referred to in the contract were infants of very tender years. Mrs. Ahrens was also pregnant at the time of the separation, and a few months later gave birth to another child. On leaving the defendant's roof, she took up abode in a very humble little house she had purchased with the $500 given her by her husband under this contract supplemented by $300 of her own money. This $300 she put in this little house was all the money she had and consequently she was left with only an humble shelter over her head, pregnant, and under contract to support, not only herself, but this man's two helpless baby children. In about two weeks after she took quarters in this little house, he visited her, and induced her to submit to intercourse with him. He continued to have intercourse with her from time to time until she left for her old home in Kentucky, to be confined. On her return from Kentucky she stopped temporarily at the Alamo Hotel. He went there and took her back to his house; gave her the same room she had occupied in former days. She assisted in the household duties, and the marital relations were doubtless resumed in their entirety. She remained in his house under these conditions about 10 days, when she says his married children interfered, and he advised her that she would have to take up quarters again in her little house.

1. Then the question is: Was the contract of separation binding and in force at the time this action was instituted, or had it been previously abrogated and annulled by the conduct of the parties? In brief, we think, in the first place, the contract went entirely too far. This woman could not by contract relieve Mr. Ahrens of his obligation to his baby children, which the contract unqualifiedly attempted to do. And, second, waiving the question as to whether or not he overreached her in obtaining this contract,

we think the contract had been abrogated and annulled by the conduct of the parties. Counsel for defendant cite some very respectable authorities, to the effect that neither endearing words, nor sexual intercourse, amount to an abrogation of an antecedent contract of separation. But with this doctrine we cannot agree. But we think a man cannot temporarily ignore and abandon a contract of separation for the purpose of gratifying his passions, and then later enforce it for the purpose of protecting his property. There is no such thing in Oklahoma as a legalized concubinage. And when Mr. Ahrens insisted in renewing the most delicate right of the marital relation, he put himself out of court, in so far as enforcing the contract of separation was concerned.

Besides, when he took his wife back to his house and restored her, as she says, to the same "room I had when I was there before—the same bedroom, the room that he was occupying at the time, the same room"—there can be no question, under the overwhelming weight of authority, but what the contract of separation was abrogated. But counsel for defendant insist that defendant "slept on a couch to himself in the same room as that occupied by the plaintiff, for the reason that his son Henry was occupying defendant's room." But, regardless of what the reason may have been, nevertheless the fact remains undisputed that he was there. And he preferred to sleep on a couch in the room with his wife, than to sleep on a bed in an adjoining room, with his "son Henry." In Winter v. Winter, 191 N. Y. 462, 84 N. E. 382, 16 L. R. A. (N. S.) 710, it is stated that a contract of separation "will * * *. be considered as rescinded if the parties cohabit or live together as husband and wife by mutual consent, for ever so short a time." And the parties to this action cohabited and lived together by mutual consent as husband and wife for about 10 days. He went to the hotel and invited her to return to his home; she consented. He showed her the room and bed that she and her babies should occupy; and she occupied it. And without objection on her part, he voluntarily occupied it with her. And, we repeat, a man cannot rescind a contract of separation when it suits his convenience and passion to do so, and then later enforce the same contract to protect his property. In Haile v. Hale, 40 Okla. 101, 135 Pac. 1143, Chief Justice Hayes says:

"There is practically no dissent among the authorities that a contract of separation and for separate maintenance of the wife is

abrogated by the reconciliation * * * of the parties thereto. Zimmer v. Settle et al., 124 N. Y. 37, 26 N. E. 341, 21 Am. St. Rep. 638; Dudley v. Fifth Avenue Trust Co., 115 App. Div. 396, 100 N. Y. Supp. 934; Hitner's Appeal, 54 Pa. 110; Knapp v. Knapp, 95 Mich. 474, 55 N. W. 353; Smith v. King, 107 N. C. 273, 12 S. E. 57; Archbell v. Archbell, 158 N. C. 408 [74 S. E. 327, Ann. Cas. 1913D, 261]; Coe v. Hill et al., 201 Mass. 15, 86 N. E. 949; Gaster et al. v. Gaster, 90 Neb. 529, 134 N. W. 235; Chapman v. Gray, 8 Ga. 341; Hendrick v. Hendrick, 4 Ky. Law Rep. 724; Schouler's Domestic Relations, § 218."

There can be no doubt that this is the law; and it is clearly applicable to the facts in this case. Having reached this conclusion, it is unnecessary to discuss the matter further, or to notice the other grounds upon which this contract of separation is attacked.

2. There remains but one other question to be determined under this appeal, and that is the amount which should be awarded as alimony. There was much evidence as to the value of defendant's property at the time of the separation. But this was material only on the question as to whether or not she was overreached in the settlement; for since that contract of separation was abrogated, the amount of her alimony must be measured by his financial condition, as shown by the record at the time the case was heard. And in the trial it was shown that the defendant had no indebtedness, and owned first mortgages on real estate and other property aggregating the sum of $18,900. He had nine adult children by a former marriage, and two living minor children, the fruits of his marriage to the plaintiff. That he is advanced in years, and at this time has but little, if any, earning capacity. The wife has been awarded the care and custody of these two children. The burden of their support, training, and education is necessarily cast upon her—a burden which equity will not permit her to bear alone while he is able at least to lighten the load. After thorough consideration and deliberation, and taking into consideration the amounts heretofore paid by the defendant to plaintiff, we find that that part of the judgment of the trial court appealed from must be reversed.

The same is therefore reversed and the cause remanded, with directions to enter judgment for the plaintiff for alimony in the sum of $2,250, and that she also have judgment for $250 as attorney's fees for services rendered in this court, and that defendant in error pay $25 per month for the support of said minor children, until further order of this court.

All the Justices concur.