MILLER *v.* MILLER.

1. HUSBAND AND WIFE—SEPARATION AGREEMENT NOT NULLIFIED BY PARTIAL RECONCILIATION.

Where a husband and wife entered into a separation agreement, dividing their real estate held by them by the entireties, a subsequent partial reconciliation and living together under the same roof did not have the effect

On effect of reconciliation on separation agreement, see note in 43 L. R. A. (N. S.) 1219.

of annulling said agreement in the absence of any intent on their part to do so.

2. SAME—PROPERTY SETTLEMENT—FRAUD.

Evidence that the wife took the initiative in the negotiations for the separation agreement, that she was represented therein by counsel and had the advice of real estate experts as to the value of the real estate divided, *held*, to negative her claim that the agreement was procured by fraud.

3. SAME.

Evidence that plaintiff wife declined to take the property given to defendant in lieu of that given to her by the agreement, *held*, to negative her claim that she was overreached.

Appeal from Wayne; Houghton (Samuel G.), J., presiding.   Submitted April 10, 1924.   (Docket No. 49.)   Decided July 24, 1924.

Bill by Wilhelmina Miller against Henry A. Miller and another to set aside a separation agreement. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Peter P. Boyle,* for plaintiff.

*Frank N. Renaud* and *Max Hulett,* for defendants.

MOORE, J.   The parties to this litigation were the owners of considerable land by the entireties.   Differences arose between them.   A short time before June 16, 1920, the plaintiff visited an attorney, and at her request he drew a bill of complaint asking for a decree of divorce, in which it was averred that defendant had cruelly made serious charges against plaintiff that were untrue.   This bill of complaint was signed by the plaintiff but was not filed.   The parties then entered into negotiations to divide their property, each of them was represented by an attorney, and the testimony of the plaintiff is:

"*Q.* And you also had Mr. Rommeck get prices on these two houses, didn't you, from real estate men?

"*A.* We had both of them.    Mr. Miller had an adviser and I had an adviser.

"*Q.* Mr. Rommeck got prices for you from real estate men?

"*A.* Yes.

"*Q.* As to what they could sell it?

"*A.* Yes."

The result of the negotiations was that on June 16, 1920, an agreement to divide the property was made and the necessary papers were executed to give it effect.

We again quote from the testimony of the plaintiff:

"The papers were signed the 16th of June, 1920, and the latter part of June, 1920, he came back home again.

"*Q.* What, if anything did he say when he returned home?

"*A.* He came to the door, asked me for a drink of water.    I says, 'Why, come on in here and have a drink.'    Then he broke down.    I guess we both broke down; started to cry.    He asked me to forgive him; asked me if I would forgive him for abusing me, and being so mean to me these last few years.    I says, 'We will forget everything.'    He stayed there until the first of December.

"*Q.* During that time what room did he occupy in your house?

"*A.* Until August we used the same room.

"*Q.* Did you use the same bed?

"*A.* Yes, sir.

"*Q.* Did you resume your marital relations there?

"*A.* Yes, sir.

"*Q.* How did he come to take a different room after August?

"*A.* He said seeing that he came back, were not those papers annulled, and I asked the attorney and he said, 'Why, yes, if you are living as husband and wife, they are; but you have got to see if he won't destroy the separation papers.'    So I asked him and I told him. 'Well, Henry.    Now seeing that you are

back home and we are living together as man and wife don't you think we had better destroy those papers you have?' He said no, oh, we could not do that after going all through this trouble."

The defendant was not sworn as a witness but in his sworn answer he says of this transaction:

"The defendant, Henry A. Miller, admits that he returned to live at the home of the plaintiff herein on June 30th, 1920, but that was tacitly understood by and between the parties that they could not live as man and wife, and could not resume their marital relation; but that they did agree that he should board there only."

Soon after the attorney had been consulted as to the effect of the parties living together, they separated and have never lived together since.

On April 20, 1921, the bill of complaint was filed in this case to have the separation agreement set aside. The case was tried in open court. After the trial had progressed for a time the chancellor said in effect that the parties ought to get together and settle the litigation, and the hearing was adjourned for two weeks to enable them to do so. Nothing came of this attempt. No more witnesses were sworn but stipulations of fact were filed, and after arguments were heard the chancellor expressed himself in part as follows:

"The court being fully advised in the premises, and finding that there was no fraud, duress or conspiracy practiced upon said plaintiff, Wilhelmina Miller, by said defendants Henry A. Miller and Christian Miller, or either of them, or their agent, in connection with property settlement agreement entered into between said parties under date of June 16, 1920, and that said agreement is valid and binding; and it appearing that said defendant, Henry A. Miller, is willing to modify said agreement in the manner hereinafter mentioned, and the court desiring that said plaintiff, Wilhelmina

Miller, shall be privileged to accept or reject such modification as hereinafter provided." * * *

The court then suggested that plaintiff be given thirty days in which to accept the property given to the defendant in the settlement. She did not indicate willingness to do this and a decree was entered dismissing her bill of complaint. The case is brought into this court by appeal. We quote from the brief of counsel:

"The fact that the parties became reconciled and resumed the marital relations for a time avoided the separation agreement. *Knapp* v. *Knapp,* 95 Mich. 477; *Wright* v. *Wright,* 162 Mich. 446."

A reference to the cases cited will show them easily distinguishable from the instant case. We quote from 30 C. J. p. 1066:

"The mere circumstance that the parties resume living under the same roof in a state of hostility, or that there is a reconciliation evidenced by friendly correspondence but not accompanied by resumption of cohabitation, is not sufficient to put an end to the provisions of a contract of separation; and mere casual acts of sexual intercourse are not conclusive evidence that the parties have ceased to live separate within the meaning of a separation agreement. Strictly speaking, a contract of separation is annulled and avoided, not solely or necessarily as a matter of law, by a subsequent reconciliation, cohabitation, or resumption of the marital relation but rather by the intentional renunciation of the agreement which the reconciliation and resumption of the marital relation sometimes evidences. Subsequent cohabitation has the effect of avoiding the contract so far, and only so far, as it establishes an intention to renounce the agreement."

The testimony of the plaintiff herself shows that as soon as the parties were advised that their living together might have the effect of annulling the

separation agreement they did not live together any longer.

The further claim is made that the separation agreement was procured by fraud. The record shows that the plaintiff took the initiative in the negotiations for a separation agreement; that she was represented by counsel; that she had the benefit of real estate experts, and we agree with the chancellor that no fraud was shown. The record also shows that when plaintiff was given an opportunity to take over the property given to the defendant in the separation agreement in lieu of what she got she declined to do so. This does not tend to convince us that she was overreached. We see no reason to disturb the decree.

It is affirmed, with costs to the appellees.

CLARK, C. J., and McDONALD, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.