## BATES *v.* BECKMAN.

1. ACTION—SPECIFIC PERFORMANCE—WIDOWER'S SUIT AGAINST EXECUTOR OF WIFE'S ESTATE—BENEFICIARIES.

   No rule of public policy is contravened by permitting a widower to sue the executor of the estate of his deceased wife and the beneficiaries under her will for specific performance of her alleged oral contract to place the real estate which she had received from him pursuant to a property settlement in a suit for divorce in the names of herself and plaintiff as tenants by the entireties in return for his agreement to place all of his personal property in joint ownership with his wife, made after they had resumed marital relations.

2. SPECIFIC PERFORMANCE—CONTRACT TO PLACE TITLE IN ESTATE BY ENTIRETIES—EVIDENCE—PERFORMANCE.

   In suit for specific performance of deceased wife's alleged agreement to place real estate in the names of herself and plaintiff husband as tenants by the entireties in return for his agreement to place all his personal property in joint ownership with his wife, made after resumption of marital relations, evidence *held*, sufficient to prove the making of the agreement alleged, but insufficient to show performance thereof on plaintiff's part entitling him to relief prayed.

3. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—SPECIFIC PERFORMANCE.

   On appeal in a suit for specific performance of an alleged oral agreement relative to real estate, it is the duty of the Supreme Court to consider the matter *de novo* on the basis of the proofs made.

---

REFERENCES FOR POINTS IN HEADNOTES

[3] 2 Am. Jur., Appeal and Error, § 2; 3 Am. Jur., Appeal and Error, §§ 815, 895.

[4] 49 Am. Jur., Specific Performance, § 167.

[5, 6] 17 Am. Jur., Divorce and Separation, § 735.

[5, 6] Effect of reconciliation on separation agreement or decree. 85 A.L.R. 420.

4. SPECIFIC PERFORMANCE—BURDEN OF PROOF.

In a suit for specific performance of oral contract relative to the title of real estate, the plaintiff has the burden of showing that he had performed the obligations resting on him under the contract.

5. HUSBAND AND WIFE—RESUMPTION OF MARITAL RELATIONS—ABROGATION OF SETTLEMENT AGREEMENT.

The reconciliation of a husband and wife and resumption of cohabitation would not abrogate settlement agreement entered into between them incident to a suit for divorce, notwithstanding no decree was ever entered, where subsequent oral agreement which is proved to have been entered into after resumption of marital relations was not designed to restore property rights to what they were before the settlement agreement had been made but was to the effect that real estate received theretofore by wife was to be placed as entirety property and all of his personal property was to be placed in their joint names.

6. SAME—ABROGATION OF SETTLEMENT AGREEMENT ON. RESUMPTION OF MARITAL RELATIONS—PRESUMPTIONS.

While it may ordinarily be presumed that property agreements between husband and wife, made in contemplation of divorce, cease to be of force and effect if the parties resume marital relations, such resumption is not conclusive of an intention to renounce the property settlement.

Appeal from Lapeer; DesJardins (George W.), J. Submitted January 13, 1949. (Docket No. 40, Calendar No. 44,178.) Decided April 11, 1949.

Bill by John H. Bates against Walter W. Beckman, executor of the estate of Eva Bates, deceased, and others for specific performance of an oral agreement to convey land and for an accounting. Decree for plaintiff. Defendants appeal. Reversed and bill dismissed.

*Jack Smith* and *Guy W. Selby,* for plaintiff.

*Smith & Smith* (*Ralph M. Freeman,* of counsel), for defendants.

CARR,. J. Plaintiff brought suit in equity, asking the specific performance of an alleged verbal agreement for the conveyance of an interest in land, and for further relief by way of an accounting. The bill of complaint alleged that plaintiff and his wife Eva Bates, now deceased, were the owners as tenants by the entireties of certain real estate in Lapeer county; that in October, 1944, Mrs. Bates started suit for divorce; that on the 3d of January, 1945, while said suit was pending, a property settlement was entered into between the parties; and that, in accordance with the agreement, plaintiff conveyed to Mrs. Bates his interest in the real estate and in the household furniture, and also paid to her the sum of $500 in cash. As the consideration for such conveyance and payment, Mrs. Bates released plaintiff from all obligation to support her and from all other claims, rights and duties, arising out of the marital relation.

No decree of divorce was entered in the cause, and plaintiff alleged in his bill of complaint that he and Mrs. Bates, at some time subsequent to the making of the agreement mentioned, resumed marital relations and occupied together the property that had been their home. Plaintiff further alleged as the basis for relief that after he and his wife had resumed living together they entered into an oral contract whereby Mrs. Bates was to place the title of the real estate in the names of herself and plaintiff as tenants by the entireties, and in consideration thereof plaintiff agreed to make his bank accounts joint with his wife. The bill also alleged that plaintiff carried out his part of the agreement in full, but that after the death of Mrs. Bates, which, it appears, occurred in October, 1946, he learned that she had not changed the title to the home as she had agreed to do and as she had caused plaintiff to believe she had done.

It further appears that Mrs. Bates left a will which was duly offered for probate. In accordance with its terms, plaintiff was left the sum of $10. Defendant Beckman is executor of the estate of Mrs. Bates, and the other defendants are the beneficiaries under the will. Plaintiff also alleged that following the establishing of joint bank accounts, in accordance with the agreement, Mrs. Bates withdrew various sums therefrom. The answers of the defendants put in issue the material allegations of the bill of complaint with reference to the alleged agreement and its performance.

The trial court came to the conclusion, after listening to the proofs of the parties, that the agreement was made as claimed by plaintiff, and further that the plaintiff had fully performed his obligations thereunder. A decree was entered in accordance with the opinion filed, ordering the defendants to make necessary conveyances and transfers to plaintiff and to come to an accounting with him as prayed in the bill of complaint. In terms, the decree also "set aside and held for naught" the conveyances made by plaintiff to Mrs. Bates in accordance with the written property agreement of January 3, 1945, and declared plaintiff to be the owner of the real estate and household furniture jointly belonging to him and Mrs. Bates, in the possession of the latter at the time of her death. A petition for a rehearing was denied, and defendants have appealed.

On behalf of defendants it is contended that the court was without jurisdiction to hear and determine the case. Reliance is placed on the decision of this Court in *Kuntz* v. *Kuntz*, 244 Mich. 78. It was there held that the plaintiff husband could not maintain a suit in equity against his wife for an accounting of the moneys that had been accumulated from their mutual savings and investments. It was further stated that the parties did not have a severable

interest in such moneys. The case at bar, however, presents an entirely different situation. This is not an action by one spouse against the other for an accounting with reference to benefits realized from joint ventures or other business transactions. Rather, plaintiff is seeking relief, as appears from his bill of complaint, on the basis of a contract that he claims was fully executed on his part and which he believed, prior to her death, Mrs. Bates had likewise fully performed. No rule of public policy is contravened by permitting the action to be maintained against these defendants. *Bennett* v. *Ball*, 231 Mich. 179.

Defendants further claim that the proofs introduced by plaintiff on the trial did not support the finding of the trial court that the agreement, on the basis of which plaintiff sought relief, was actually made as claimed by him. The principal witness on the matter was Mrs. Sarah A. Bates, plaintiff's sister-in-law. She testified that on some date in November or December, 1945, Mrs. Bates told the witness that she and plaintiff had "gone back together," that they had "made up," and further that they had made an agreement to have their property in their joint names. The witness further testified that Mrs. Bates stated, in the presence of the plaintiff, that she had made plaintiff a joint owner of the house and property that had been quitclaimed to her under the agreement of January 3, 1945, and that plaintiff had to keep his part of the bargain and to make her joint owner of certain government bonds that he had. It appears from the testimony that these bonds were in the possession of the witness, and that the total amount thereof was $8,650, of which $4,000 were United States Government Series G bonds. The witness claimed that she asked plaintiff, in the presence of Mrs. Bates, if he wanted the bonds, and that he replied, "Yes, we have made

up and everything is all right; everything is joint between us now."

In further support of plaintiff's claim, the cashier of the First National Bank of Lapeer and the assistant cashier of the Citizens Commercial & Savings Bank of Flint testified with reference to the establishment of joint accounts by Mr. and Mrs. Bates in December, 1945, and the early part of 1946, and to withdrawals from such accounts on checks drawn by Mrs. Bates. It further appears from such testimony that a part of the bonds delivered to plaintiff by his sister-in-law were sent in to the Federal treasury, by the Citizens Commercial & Savings Bank of Flint, for redemption, that the bonds so redeemed were the Series G bonds, and that the total value thereof was $4,400. The testimony with reference to the opening of the joint accounts supports, to some extent at least, plaintiff's claim with reference to the making of the agreement. It is a fair inference that some steps were taken, Mr. and Mrs. Bates acting together, to put the personal assets of the former in joint accounts. While the testimony with reference to the matter is somewhat limited, we think the trial court was correct in his conclusion that plaintiff had established by the requisite degree of proof the making of the agreement alleged in the bill of complaint.

As before stated, plaintiff averred in his pleading that he had fully performed the oral contract with his wife. The trial court thought the proof sufficient to establish such claim. Defendants insist that plaintiff's proofs established merely a partial compliance on his part with the undertaking that he claims to have assumed under the contract. This suit being in equity, it is the duty of this Court, on appeal, to consider the matter *de novo* on the basis of the proofs. That joint accounts were established is not open to question. On the other hand, the

agreement which plaintiff sought to establish by the testimony of his sister-in-law, in terms required that all of his personal property should be placed in joint ownership with his wife. The record, however, fails to show that this was done. The bonds which plaintiff received from his sister-in-law apparently had a face value of $8,650. Some of said bonds were redeemed and the proceeds placed in a joint account. There is no showing as to what was done with the balance, and we may not indulge in speculation with reference to the matter. The burden was on the plaintiff to establish by competent proofs that he had performed the obligations resting on him under the contract.

We note, also, from the testimony of the cashier of the First National Bank of Lapeer that on November 9, 1945, the sum of $4,500 was deposited in the name of the plaintiff, which amount was withdrawn one week later. On December 14th following, the account was reopened with a deposit of $1,050, said account being made joint on January 18, 1946. Assuming that the deposit on December 14th was a part of the withdrawal made on November 16th preceding, the question naturally arises as to what was done with the balance of such withdrawal. We cannot determine from this record, with reasonable accuracy, that it was deposited in a joint account. Neither is there any showing that plaintiff did not at the time of the death of Mrs. Bates have other bank accounts standing in his own name, or that he did not own any personal property which he had not placed in the joint names of himself and his wife. It cannot be said on this record that plaintiff sustained the burden of proof resting on him with reference to his performance of the alleged agreement. Such being the situation, he is not entitled to the relief sought by his bill of complaint.

Counsel for plaintiff contend in their brief that the settlement agreement entered into between the parties on January 3, 1945, was abrogated by their subsequent reconciliation and resumption of cohabitation. Defendants contend that there is no proof to establish such resumption. Assuming, however, that marital relations were re-established, as alleged by plaintiff in his bill of complaint and as found by the trial judge, the conclusion does not follow that plaintiff is entitled to relief on the theory that the agreement made during the pendency of the divorce action, and all that was done with reference to carrying out such agreement, became a mere nullity when the reconciliation was effected. The bill of complaint was not based, nor was the case tried, on any such theory. Rather, relief was sought by plaintiff on the theory that after the parties resumed living together they made a definite agreement, by virtue of which the property then owned by each should be placed in their joint names. As before noted, the proofs offered by plaintiff tended to support such claim. It cannot be said that the agreement was merely one to restore the condition as it was before the agreement of January 3, 1945. There is nothing in the record to show that prior to that date any bank accounts, household furniture or other personal property, were held in joint ownership by the parties. Clearly the agreement alleged by plaintiff, and which he undertook to prove on the trial, was based on the assumption and belief that the situation resulting from the carrying out of the prior agreement in question still obtained, and that in accordance therewith Mrs. Bates was the owner of the real estate, and of the household furniture, and that plaintiff had the right to do as he saw fit with his personal property.

It has been held in many cases that property agreements between husband and wife, made in con-

templation of divorce, cease to be of force and effect if the parties resume marital relations. It is to be presumed, under ordinary circumstances, that such was the intention of the parties. As indicated, however, it does not appear in the instant case that either Mr. or Mrs. Bates considered that the agreement of January, 1945, and the conveyances made thereunder were mere nullities at the time they made the new arrangement in the latter part of that year. It clearly appears from the later agreement that they did not consider that such was the fact.

In *Wright* v. *Wright,* 162 Mich. 445, it was held that a separation agreement, made in contemplation of divorce proceedings, was abrogated by the resumption of marital relations, such resumption being based on promises that were not kept. The Court pointed out, in referring to the agreement, that:

"The conduct of the parties, in other respects, indicates that they regarded it as abrogated. Indeed, it is urged that defendant later on made other considerable provision for complainant."

It was accordingly held that plaintiff's right to permanent alimony in the divorce action was not barred because of such agreement.

In *Miller* v. *Miller,* 227 Mich. 684, the parties, husband and wife, entered into a separation agreement which plaintiff in the case sought to have set aside. In dismissing the bill of complaint, the Court quoted with approval from 30 C. J. p. 1066, as follows, in part:

"Strictly speaking, a contract of separation is annulled and avoided, not solely or necessarily as a matter of law, by a subsequent reconciliation, cohabitation, or resumption of the marital relation, but rather by the intentional renunciation of the agreement which the reconciliation and resumption of the marital relation sometimes evidences. Subse-

quent cohabitation has the effect of avoiding the contract so far, and only so far, as it establishes an intention to renounce the agreement."

See, also, *Hagerty v. Union Guardian Trust Co.,* 258 Mich. 133 (85 A. L. R. 417). In the case at bar it cannot be said that the parties to the agreement made in January, 1945, intended, on their reconciliation, to renounce it. Rather, their conduct suggests a contrary purpose. Further, as before noted, plaintiff did not ask relief in his bill of complaint on the theory that the reconciliation had abrogated the prior agreement, and that in consequence the property rights of the parties were restored to their former status. The case was not tried on such theory but rather on the basis of claims inconsistent therewith.

For the reasons above stated, the relief granted to plaintiff cannot be sustained. A decree will enter in this Court, reversing the decree of the circuit court and dismissing the bill of complaint, with costs to defendants.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.