No. 13,454.

HUNTER, GUARDIAN *v.* WILLIAMS ET AL.
(44 P. [2d] 509)

Decided April 8, 1935.

Mr. O. E. Phlegar, for plaintiff in error.

Messrs. Northcutt & Northcutt, for defendants in error.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

The plaintiff in error, Hunter, as guardian of the person and estate of Charles W. Jones, on May 23, 1933, filed a petition to vacate a judgment entered against Jones on January 28, 1926. A motion to strike the petition from the files was sustained; petitioner elected to stand on his petition, as amended, and an order of dismissal was entered. To this judgment error is assigned.

In April, 1925, Jones filed an action against defendants in error, in the district court of Las Animas county, to set aside two quitclaim deeds, alleged to have been fraudulently obtained by defendants, Williams and McGee, from Jones in January, 1922, while he, Jones, was of unsound mind. The complaint is lengthy, and if its allegations are true, then, considered together with the allegations of the petition to vacate the judgment, as they should be, they depict an unconscionable scheme to

defraud an unfortunate person, which should arrest the attention of any court of justice. Details of the allegations of the complaint will be related in our discussion of the sufficiency of the petition to vacate.

An answer was filed to Jones' complaint, and, as alleged in the petition to vacate, Jones was frightened out of the state by defendants, Williams and McGee, and at the time of trial, on January 26, 1926, attorneys for Jones, not knowing of his whereabouts, and being unable to prosecute the action in his absence, withdrew from the case, and there being no appearance by plaintiff or his counsel, the case was dismissed with prejudice, and finding and judgment entered to the effect that Jones had no interest, claim or title to the property described in the quitclaim deed, he had sought to set aside.

The petition to vacate this judgment, filed as before mentioned in May, 1933, alleges: That in September, 1929, a petition was filed in superior court of Maricopa county, Arizona, for the appointment of a guardian of the estate and person of Charles W. Jones, and letters of guardianship were issued to the petitioner herein, who qualified and has since been acting; that in January, 1922, Charles W. Jones was the owner of certain described real property; that prior to that date and all times since, Jones was, and is, incompetent and incapable of transacting business of any kind; that in January, 1920, a complaint was filed in the county court of Las Animas county, Colorado, charging Jones with being a mental incompetent, and on hearing upon the petition, Jones was committed to Woodcroft Hospital for observation, treatment and care; that on March 29, William M. Jones, the father of Charles W. Jones, the incompetent, applied for, and was given the custody of said son, and was permitted to remove him from Colorado to Oklahoma, where the father died, without having himself or any other person appointed guardian; that from the date of the death of the father, Charles W. Jones was at large roaming about, and his whereabouts were unknown to his family; that he was confined.

in hospitals in different parts of the country; that in January, 1922, Jones returned to the location of his land; that defendants, well knowing his mental condition and having full knowledge of the proceedings whereby he was committed to the sanitarium, conspired and confederated together for the purpose of procuring title to his lands, and to defraud him of title and ownership, and to that end did cause him to be arrested on a charge of stealing and killing cattle, of which he was not guilty, his innocence being well known to defendants; that while he was confined in jail in Huerfano county, the defendants approached him and informed him that unless he left the country he would be found guilty and sent to the penitentiary, but that they would make bail for him and assist him to escape if he would convey his lands to Catherine Clark, the mother-in-law of Williams, and that they would give him $100 for the conveyance and a Ford automobile in which to escape, and after three years, would pay him $10,000 for the land; that being feeble in mind and in fear, he made and executed the deeds as requested, received the $100, out of which he paid defendant Williams $15 for execution, acknowledgment and recording of deeds, and took the car and left, thereafter wandering alone, distressed mentally and physically until 1925; that in the meantime Catherine Clark conveyed all of the land, except 40 acres, to Williams and his wife Neva, who later conveyed 640 acres to McGee; that in 1925, Jones returned to Las Animas county and interviewed Williams about the payment of the $10,000 and was informed by Williams he had better leave the country at once, or he would be placed in jail on the old charge; that at that time, Mrs. Luna, a sister of Jones, learned of the conditions surrounding the conveyance of the land by Jones, and employed Orr & McGarry, attorneys, to institute suit for recovery of the land; that suit was commenced (the complaint being the one to which reference is made at the beginning of this opinion, and alleging substantially these same facts); that when the case was ready for trial, the

defendants again caused Jones to be incarcerated in jail in Huerfano county; that for the purpose of preventing his appearance at the trial, defendants again approached him and told him that if he would leave the country and stay away, they would give him $10 and an old pair of shoes, and he was warned that if he did not do so, he would be killed; that not knowing the importance of communicating with his attorneys, and without their knowledge and consent, he again left the country and wandered from hospital to hospital until September 6, 1927, when he appeared in Phoenix, Arizona; that on September 27, 1927, the Phoenix Savings Bank and Trust Company, was appointed guardian of the person and estate of said Jones, and acted as such until petitioner herein was appointed; that all this time his attorneys in Colorado knew nothing of his whereabouts, and were unable to conduct the suit they had instituted for him, in which a cross-complaint had been filed by defendants seeking to quiet title to said lands, as well as an answer denying generally the charges in the complaint, and admitting signing the bail bond and paying $750 on default; that his counsel withdrew from the case, and the judgment hereinbefore mentioned was rendered against Jones; that petitioner did not know, and had no means of learning the facts concerning the conveyance of said land by Jones, until 1931; that at that time he started an investigation which continued for a long period of time, and with the aid of the United States Veterans' Bureau, he did, in 1932, by correspondence and interviewing witnesses, learn of the fraudulent conduct of the defendants, herein set out; that he instituted a suit upon the advice of the Veterans' Bureau, in the United States district court at Denver, which is still pending, and in which defendants appeared and set up the judgment, herein mentioned, as a defense, and petitioner was advised that it was necessary to file this proceeding for relief against the judgment; that if Jones had not been fraudulently prevented from appearing at the trial of his original suit, he would have been able to

440

prove the allegations of his complaint, and if the judgment be now set aside, and he is allowed to reopen said cause, he will be able to produce evidence to support his complaint as well as the allegations of this petition to vacate the judgment.

■■ This petition, defendants moved to strike from the files, upon the grounds that it failed to state facts sufficient; that the original action was barred by the three year statute of limitations; and that the petition to vacate was not filed within five years after the beginning of the trust sought to be alleged therein, by reason of which it also is barred; and further that petitioner is guilty of laches. This motion, which is in effect a demurrer, was sustained. Treating the pleading as a demurrer, it admitted all the well pleaded facts of the petition, and we are of the opinion, and so decide, that on its face it was sufficient to require the court to grant the prayer thereof.

■ Regardless of the truth or falsity of the allegations of fraud in the original complaint, it is the allegation of fraud in the procuring of the judgment, with which we are concerned; however, this seems, from the allegations, to have been a continuing fraud from its beginning, existing up to, and entering into, the judgment. In their brief, counsel for defendants say: Jones was not responsible for the starting of the original suit, for the reason that it was his sister who caused it to be instituted. Upon its face the complaint, and the petition to vacate, presented a statement of the fact, apparently capable of proof, that Jones was a mental incompetent at all the times involved. The statute of limitations, section 6403, C. L. 1921, is inactive until discovery of the fraud. From allegations of the complaint and petition, it appears that Jones is under disability and therefore is excused from laches and relieved from the operation of the provisions of statute of limitations. The petitioner alleges discovery in 1932, and if limited, he acted within the prescribed time.

■■ Defendant alleges the expenditure of large

sums of money after acquiring the title, and that by such expenditures he made valuable improvements on Jones' land by reason of which he contends that before the latter can seek equity, he must do equity by offering to repay. This is a misplaced argument. It might be effective in an action for rescission of contract, but not in one reeking with allegations of fraud. If these allegations of fraud, concerning the procurement of the judgment, are true— and there is nothing in the record to refute their truth— then the court was misled into entering a false judgment. Once false, it is always false, and persons under a disability will be protected by the courts, not only to redress a wrong to the helpless and injured party, but to preserve the sanctity of all that a judgment of a court should be. To do otherwise would put a premium upon deception and its concealment. No statute was ever enacted to allow fraud to live, and we dare say such would not receive sanction by any rule of law.

The motion to strike the petition to vacate should have been overruled.

Judgment reversed and the cause remanded with instructions to reinstate the case for further proceedings.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE BOUCK concur.