No. 14,143.

CITY OF COLORADO SPRINGS *v.* COLBURN.
(81 P. [2d] 397)

Decided June 20, 1938.   Rehearing denied July 11, 1938.

Mr. BEN S. WENDELKEN, Mr. JOHN A. CARRUTHERS, Mr. EDWARD L. WOOD, Mr. NORMAN W. BAKER, for plaintiff in error.

Mr. CLYDE L. STARRETT, Mr. THOMAS I. PURCELL, Mr. GEORGE M. GIBSON, for defendant in error.

*In Department.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

ACTION involving alleged negligence of the city of Colorado Springs in maintaining the floor of the business office of its light plant in such slippery condition that plaintiff, an elderly woman, fell thereon and sustained serious injury. On a favorable verdict, judgment entered for her in the sum of $1,975. Sufficiently stated, it is contended by plaintiff in error, defendant below: (1) That the complaint does not state a cause of action; (2) that notice to the city of the injury, required by '35 C. S. A., chapter 163, section 231 (C. L. 1921, §9157), was not given, hence the action must fail; (3) that the verdict did not have sufficient evidentiary support.

The complaint sought to set forth two causes of action,

but the trial was upon the one predicated on the theory that the notice required by the statute was excused by virtue of plaintiff's physical and mental incapacity to give it.

The city of Colorado Springs owns and operates its electric and water utilities, and maintains an office where patrons may come and pay their light and water bills and transact other business pertinent to such activities. July 3, 1934, plaintiff went to the office of the city to pay a water bill owing it. The office floor was of terrazo, a floor material composed of marble aggregates and cement mortar ground down and highly polished with a petroleum substance in the form of wax. It had been so highly polished less than a month prior to the accident. The main entrance to the office is through a large door, from which there is a strip of rubber matting extending to the counter where payments are received. On either side of this door there is a smaller one, but no matting extends from them to the counter. Plaintiff entered through one of the smaller doors and had walked about three-fourths of the way toward the counter, when, as she testified, "I turned to go over to that counter and my feet twisted and I went over on my side and I shot over like a shot from a gun." She fell on her right hip, which was broken. She was in the hospital ten weeks and then returned home.

No notice was given the city until April 1, 1936. There is no question as to the seriousness of her injuries, nor is the judgment challenged as to amount; but as to the claim of her inability to give notice, there is challenge. Hospital and doctor bills amounted to $1,555.25. She sought recovery in the sum of $15,000, but the award was not greatly in excess of her actual outlay.

1. That part of the complaint charging negligence was as follows: "After plaintiff had entered into the main office room of said building, and, solely on account of the negligent operation, care and maintenance of said building, by the above-named defendant, through its agents and employees, in this, to-wit: that the main tiled

floor in said building was so highly polished with wax or other substance, which caused plaintiff to slip in and upon said tiled floor, breaking her right hip joint and hip bones, through no fault of said plaintiff.'' It will be noted that it is not the act of constructing the floor of terrazo that is alleged to be negligent, or that the same was polished, but that the accident was caused by its being "so *highly* polished." We think the allegations of negligence meet the requirements of the rule. *McGonigle v. Kane,* 20 Colo. 292, 38 Pac. 367; *Adams Express Co. v. Aldridge,* 20 Colo. App. 74, 77 Pac. 6; *Denver & R. G. R. R. Co. v. Vitello,* 21 Colo. App. 51, 121 Pac. 112; *Gotch v. K. & B. Co.,* 93 Colo. 276, 25 P. (2d) 719.

2. While respectable authority has held that under statutes similar to ours, a failure to give the required notice to the city within the statutory time fixed cannot be excused, and that the statute must be strictly construed, we are inclined to adopt what we conceive to be the more reasonable and humane rule, also approved by respectable authority, to the effect that under proper circumstances of mental and physical incapacity, giving of notice is excused, the question as to the sufficiency of the circumstances to work such excuse properly to be submitted to the jury, as was done here. See 31 A. L. R. 619, where the cases are analyzed. See, also, *Denver v. Taylor,* 88 Colo. 89, 292 Pac. 594, and particularly Mr. Justice Butler's specially concurring opinion.

3. In considering the sufficiency of the evidence it is only necessary that we determine whether there was competent evidence upon which the verdict of the jury was based, and we think a few examples of it will suffice. The alleged insufficiency was directed to both (a) mental and physical incapacity to give notice, and (b) maintaining the floor in a too highly waxed condition.

(a) As to the incapacity of plaintiff to give the required notice, the record discloses that while she was in the hospital her broken leg was suspended in a Thomas

splint made of two rods of iron running down both sides of the leg and under the foot, terminating at the tip, arranged with weights and pulleys so as to tend to draw the muscles and ligaments into their normal position. The effect of this process on one's mental capacity surely need not be relegated exclusively to the field of conjecture. In addition to this there was positive and direct testimony to the effect that plaintiff was too mentally ailing to give thought to the ordinary business matters needing attention.

As to her condition when she returned home, it was shown she had to lie on her back or the leg would pain her. Arthritis, which had not troubled her in twenty years, was revived. She was nervous and irritable to a point which required the discharging of a girl who had been hired to assist her. Prior to her accident she had been able to take care of her business of running a rooming house, but thereafter, her daughter had to look after it. The attending physician testified that the shock of the accident and her subsequent confinement would have the effect of diminishing her mental ability. Coupled with this testimony was plaintiff's presence in the court room, where the jury had opportunity to measure for themselves the extent to which she had been rendered incapable of giving notice.

(b) As to the condition of the floor, the witness Thomas, an architect of thirty-three years experience, and whose qualifications as an expert on floors of this kind was not questioned, testified that a terrazo floor used by the general public should not be waxed at all, and that the purpose of waxing such a material is to bring out the character and beauty, but that carrying out such purpose is at the cost of safety; that the use of wax on such a floor is not safe maintenance where it is used by the general public, and that its use in a public place is always a hazard. The testimony of this witness was objected to, but we think it was competent, relevant and material to the issue, and since the jury believed it, it is

enough. The effect of the verdict is that waxing and highly polishing the terrazo floor, the circumstances considered, constituted negligence.

No complaint is made as to instructions given or refused. We believe all assignments urged by plaintiff in error to be without merit.

Let the judgment be affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE BAKKE and MR. JUSTICE KNOUS concur.