Estate of William Goldstein, Deceased, Thelma Zelinger, Executrix v. Commissioner.
Estate of Goldstein v. Commissioner
Docket No. 1761-70.
United States Tax Court
T.C. Memo 1971-322; 1971 Tax Ct. Memo LEXIS 11; 30 T.C.M. (CCH) 1399; T.C.M. (RIA) 71322; December 22, 1971, Filed Gilbert Goldstein, 1234 Bannock, Denver, Colo., for the petitioner. Arther B. Bleecher, for the respondent. SCOTT
Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in the estate tax of the Estate of William Goldstein in the amount of $25,596.59. The issue for decision is whether decedent's surviving spouse *12 made a valid election to take one-half of the estate pursuant to Colorado law so as to entitle the estate to a marital deduction of $102,692 or whether that deduction is $7,528.28, the amount allowable under the provisions of decedent's will. Findings of Fact Some of the facts have been stipulated and are found accordingly. Thelma Zelinger, executrix of the Estate of William Goldstein, the petitioner in this case, was a legal resident of Denver, Colorado on the date of the filing of the petition herein. Decedent died testate on December 9, 1966. His last will and testament, dated December 7, 1953, and a codicil thereto, dated August 2, 1966, were admitted to probate in the Probate Court in and for the City and County of Denver and State of Colorado (hereinafter referred to as the Probate Court or the Denver Probate Court) and letters testamentary were issued by that court to Thelma Zelinger on January 3, 1967. An estate tax return was filed by the executrix on March 8, 1968, with the district director of internal revenue at Denver, Colorado. Decedent's will, after directing that all just debts, funeral expenses, and expenses of his estate be paid, provided: SECOND: If my *13 wife Elizabeth shall survive me or not die in a common disaster with me, I give, devise and bequeath all of my property, both real and personal, of every kind and character wherever situate and whether now owned or 1400 hereafter acquired, to my Trustee hereinafter named IN TRUST NEVERTHELESS to hold, manage, control, invest and reinvest in accordance with the authority hereinafter conferred upon him and after deducting a reasonable fee for his service as trustee to distribute the net income and principal as follows: (a) My trustee shall pay the net income of my estate to my wife Elizabeth as long as she shall live, making such payments in monthly installments. In addition to such income, my trustee shall pay to my wife Elizabeth such portions of the principal as my trustee shall deem necessary to enable her to support herself in the manner consistent with her best interests. (b) If I am survived by my wife, then upon her death my trustee shall distribute my trust estate to my daughter Thelma Zelinger, * * * The will gave the executor and trustee full powers to deal with the estate and trust property "as if he were the absolute owner thereof free from all restrictions and *14 without Court order." The will provided that the trust should be administered free from the supervision of the courts and requested that the executor and trustee be permitted to qualify and serve without bond. The will provided for the appointment of David Goldstein as executor and trustee but this provision was deleted by a codicil dated August 2, 1966, which provided for the appointment of Thelma Zelinger, the decedent's daughter as executrix and trustee. Elizabeth Goldstein, the decedent's surviving spouse, who was herself deceased at the time of the trial of this case, suffered a cerebral vascular thrombosis on January 28, 1958, which resulted in partial paralysis of the body and brain damage to the right side of the upper brain. This illness affected her mental capacity. Elizabeth Goldstein continued to deteriorate from 1958 until her death. Although she could recognize people up until her death, her powers of concentration were limited. She would repeat things said to her three or four times and would sit without responding to matters explained to her, giving no indication that she understood the explanation. She was unable to care for herself physically or to manage the *15 simple financial affairs of her household. Her speech was difficult to understand because of paralysis of the left side of her body including her face. She was never left without an attendant. When decedent was living, except when he was hospitalized, he took care of the supervision of the housekeeper or nurse after his wife's stroke and directed the management of the household affairs. When decedent was hospitalized, petitioner, his daughter, managed the household affairs. She had a power of attorney from her father to draw checks on his account and handle financial matters. Decedent's wife never was able to fully comprehend that her husband had died. She did not attend the funeral. After her father's death, petitioner managed her mother's household except for the matters which were handled by an employed housekeeper or attendant. Petitioner attempted to explain some financial matters to her mother but her mother evidenced no interest in knowing about or any understanding of the matters petitioner attempted to explain to her. Elizabeth Goldstein showed no interest in "what she had or not even where it came from. As long as she was taken care of satisfactorily, she was happy." Elizabeth *16 Goldstein was hosiptalized on several occasions from 1964 until her death. She was given a complete examination including a neurological examination in a hospital during the period from May 26 to June 26, 1964. She entered the hospital on July 29, 1967, and stayed until August 9, 1967, for treatment of a fractured fibula, rheumatic heart disease, and a stroke conceived in a cerebral vascular accident. She was again admitted to a hospital on November 1, 1968, for a second stroke and she stayed there until November 9, 1968. She was not hospitalized from the date of her husband's death through July 3, 1967. On February 23, 1967, petitioner as executrix petitioned the Probate Court "that she be authorized and directed to disburse such sums as are necessary monthly for the support and maintenance of the beneficiary, Elizabeth Goldstein." The petition recited that as the result of a stroke, Elizabeth Goldstein was unable to walk and must have nursing and housekeeping assistance at all times, that the decedent's will provided "that all of his property shall be held in trust by the Petitioner for the use and benefit of his wife, Elizabeth," with net income payable to her for life and in *17 addition such portion of the principal as the Trustee shall deem necessary for her support, and that "the residual beneficiary of the Trust Estate is the Petitioner." The Probate Court ordered the executrix to disburse from the estate the sums needed to provide support and maintenance for Elizabeth Goldstein and that these sums be charged as a distribution to the trustee. 1401 On April 3, 1967, petitioner filed with the State of Colorado an inheritance tax application listing the assets of decedent's estate and reflected therein that Elizabeth Goldstein was to receive a life estate in the estate assets having a value of $62,960.94, and that Thelma Zelinger was to receive a remainder interest valued at $134,984.44. On June 9, 1967, petitioner paid the State of Colorado inheritance tax of $6,151.02. On March 8, 1968, the next to the last day for petitioner to file the Federal Estate Tax Return for decedent's estate, David Goldstein, as next friend of Elizabeth Goldstein, filed a petition with the Probate Court which recited in part as follows: 3. That William Goldstein left a Will which was admitted to probate by this Court on January 3, 1967. 4. That the statutes of the *18 State of Colorado provide for an election by the widow to take under the laws of the State of Colorado pursuant to 153-5-4, C.R.S., 1963, as amended. 5. That the said Elizabeth Goldstein suffered a stroke in or about 1958 and since has been and now is physically incapacitated, partially paralyzed, unable to walk, and mentally restricted, although she has not been adjudicated a mental incompetent. 6. That the said Elizabeth Goldstein had no knowledge or understanding of the time in which to elect pursuant to said 153-5-4, C.R.S., 1963, as amended, and having been advised of such right does desire this Court enter such Petition for election, and requests further that this Court enter an Order allowing her to take and receive one-half of the Testator's Estate as provided in Section 153-5-4, said Order being entered nunc pro tunc June 9, 1967. 7. That the Petitioner further alleges that said failure to file the Petition was without fault of Elizabeth Goldstein and that due to her mental and physical condition said Elizabeth Goldstein was unable to make a prior prudent determination concerning said election. On the same date Thelma Zelinger filed a waiver of notice, stating that *19 she was the executrix of decedent's estate and the sole and only heir of decedent except for the widow, and requesting that the Court "hold a hearing and enter the Order prayed for." A third document was filed that date with the Probate Court. It stated: COMES NOW Elizabeth Goldstein and petitions this Court to enter the Order requested by David Goldstein as next friend, and waives any notice relating to the above-entitled Petition. (X) /s/ Elizabeth Goldstein David Goldstein is a nephew of the decedent, William Goldstein. Prior to filing his petition with the Probate Court, he went to visit his aunt, Elizabeth Goldstein. He told Elizabeth that she should make some decision with respect to her late husband's estate. He attempted to explain to her the concept of an election to take against the will but in his opinion she never understood the meaning of making an election to take against the will. Finally, she told her nephew David to do whatever he thought best for her. After a short hearing, at which David Goldstein testified that Elizabeth Goldstein was incapacitated because of a stroke and did not have the mental capacity to reason things out for herself, that he had discussed *20 with her the election she had to take one-half of her husband's estate, that she advised him to file the election on her behalf, and that in his opinion she did not have "the capacity to make this decision at an earlier date without explanation from" him or someone, the Probate Court granted the order prayed for in the petition on March 8, 1968, and entered its order on that date nunc pro tunc June 9, 1967. The order stated in part: 3. That the failure of Elizabeth Goldstein to file a Petition at an earlier date was without the fault of Elizabeth Goldstein, and that the same was caused by and the result of her physical incapacity and mental condition. 4. That the allegations of the Petition are true and that the determination of Elizabeth Goldstein to take and receive one-half of the Testator's Estate is a prudent determination. On March 8, 1968, petitioner filed the Federal Estate Tax Return, form 706, for the decedent's estate. The return indicated that the surviving widow had elected to take a statutory share and renounce the will. The return reflected that property interests passing to the surviving spouse were one-half interests in 17 items of real and personal property, *21 plus $7,528, the proceeds of two life insurance policies, all having a total value of $110,743. Petitioner computed the estate tax payable to be $5,370. Because of a computational error, respondent, on June 25, 1968, refunded $75.85 to the executrix. On December 23, 1969, respondent mailed his statutory notice of deficiency to petitioner in which he determined that only the proceeds 1402 of the life insurance policies qualified for the marital deduction and that there was a deficiency in the estate tax of $25,596.59. Opinion Section 2056, I.R.C. 1954, [1] provides that in determining the taxable estate, there shall be allowed as a deduction from the value of the gross estate, the value of any interest in property "which passes or has passed" from decedent to his spouse to the extent that the deduction does not exceed 50 percent of the value of the adjusted gross estate. Included in the definition of an interest in property which shall be considered as passing from the decedent is the dower or curtesy interest (or statutory interest in lieu thereof) of the *22 surviving spouse of the decedent (section 2056(e)(3)). The statute is clear (Section 2056(b)) that no deduction shall be allowed under section 2056 for a terminable interest passing to the surviving spouse. *23 Both parties recognize here that the trust estate set up by decedent's will was a terminable interest which would not qualify for the deduction provided for under section 2056. Petitioner, however, contends that the surviving spouse made a valid election under Colorado law to take her statutory allowance in lieu of the life estate bequeathed to her by the will, and that therefore the estate is entitled to the maximum marital deduction of one-half of the adjusted gross estate. Respondent recognizes that if petitioner did make a valid election under Colorado law to take her statutory allowance, the property which she received pursuant to such election would have "passed" to her from decedent as required by section 2056. It is respondent's position, however, that the purported election made by petitioner was not a valid election under Colorado law and therefore all that passed to petitioner within the meaning of section 2056 from the decedent was the $7,528.28 of life insurance. There have been numerous cases dealing with the problem of whether a marital deduction is allowable where a probate or some other lower State court has ruled with respect to the interest in an estate which *24 has passed to the surviving spouse. Much confusion existed for a number of years as to the proper weight to be given to the decisions of lower State courts and the extent to which a Federal court, in adjudicating Federal tax matters, should consider such decisions. The conflict in the many cases in this area was laid to rest in Commissioner v. Estate of Bosch, 387 U.S. 456 (1967). After reciting the conflict in the positions taken by various Federal courts, the Supreme Court stated that "when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should * * * not be controlling," but that the state law as determined by the state's highest court should be applied and if there is no decision by that court, then federal authorities must apply what they find to be the state law "after giving 'proper regard' to relevant ruling of other courts of the State." In Estate of William John Ahlstrom, 52 T.C. 220 (1969), we held that there had not passed from the decedent to his surviving spouse a dower interest *25 under Florida law even though the County Judge's Court had, after the period of limitations provided under Florida law for making such a determination, entered a judgment of 1403 dower in favor of the surviving spouse. In that case we pointed out that the Bosch case also stands for the principle that the marital deduction statute should be strictly construed in the light of its legislative history. In Ahlstrom we quoted the portion of the Bosch decision referring to the statement in the report of the Senate Finance Committee recommending enactment of the marital deduction statute that "'proper regard,' not finality, 'should be given to interpretations of the will' by state courts and then only when entered by a court 'in a bona fide adversary proceeding.'" It is therefore clear that in this case we must determine whether under the law of Colorado, decedent's surviving spouse made a proper election to take her statutory allowance in lieu of the bequest to her in the will, giving proper regard to the order entered on March 8, 1968, by the Denver Probate Court as well as the circumstances *26 surrounding the entry of this order. Colorado statutes provide that notwithstanding the provisions of a testator's will, his surviving spouse shall have the option to take one-half of the testator's estate, provided that the option is exercised within 6 months after the testator's will is admitted to probate. The statute also provides that the failure to exercise the option within 6 months (or if within the 6-month period an extension of time to make the election is granted for a period not to exceed 6 months within the extended period) shall be conclusive evidence of the consent of the surviving spouse to the provisions of the will. The statute also provides for the method by which the court may make the election on behalf of an incompetent surviving spouse and that when this method is used the court shall make the election for the surviving spouse within 6 months from the time the will is admitted to probate. [2]
*27 The language of the statute clearly states that the failure of the surviving spouse to exercise the option to take against the will within the 6-month period is "conclusive evidence of the consent of the surviving spouse to the provisions of the will." In the part of the statute concerning the election in case the surviving spouse is incompetent, the requirement that the election be made within the 6-month period is repeated. Also the Supreme Court of Colorado in In re Sheely's Estate, 102 Colo. 194, 78 P. 2d 378 (1938), has interpreted the similar predecessor statute to section 153-5-4 of the Colorado Revised Statutes (1963) to be unambiguous in requiring that the election be made within the period of 6 months after the testator's will is admitted to probate. In holding that an election made 10 months after that date was untimely, the Court stated (78 P. 2d at 379): Its wording, however, is unambiguous, and the intent of the General Assembly seems exceptionally clear. We know of no valid reason for regarding the provision as merely directory. To do so would *28 1404 apparently violate the emphatic language used, and be equivalent to judicial legislation, which is beyond our lawful power. Petitioner recognizes that the election made on behalf of Elizabeth Goldstein was not within the 6-month period prescribed by the Colorado statute but argues that Colorado case law holds that (1) the statutorv requirements to give notice within a specific period are excused under proper circumstances of mental incapacity, City of Colorado Springs v. Colburn, 102 Colo. 483, 81 P. 2d 397 (1938); (2) the statutes of limitations do not operate against persons under legal disability such as mental incompentency, Hunter v. Williams, 96 Colo. 440, 44 P. 2d 509 (1935); and (3) the lack of an adjudication of mental incompetence does not bar a finding that there was mental incompetence in determining whether the bar of the statute applies. Brown v. Smith, Conservator, 119 Colo. 469, 205 P. 2d 239 (1949). City of Colorado Springs v. Colburn, supra, Involved a tort suit against a Colorado municipality. A Colorado statute required that notice be given to the city within 2 years of the accident, in order *29 for such a suit to be maintained. Although notice was not given within the required time, the court held that under proper circumstances of mental and physical incapacity giving of such notice is excused. The Colorado statute requiring that notice be given within 2 years had no provision as to what would be done in case of the mental incapacity of the injured person and the court concluded that the better view was that under proper circumstances, the giving of notice should be excused. That case is therefore clearly distinguishable from the instant case which involves a statute which contains provision for protection of a person who is mentally incapacitated. Hunter v. Williams, supra, involved a fraud against an adjudicated incompetent. The applicable statute of limitations for bills of relief on the grounds of fraud was 3 years from the time of discovery of the fraud and in the case of a person under legal disability this refers to discovery by his guardian since if the person seeking the relief was insane at the time the action accrued, the 3 years begin to run when the disability was removed. The provisions of the statute involved in Hunter v. Williams, supra, *30 are substantially different from the provisions of the statutes here involved. Brown v. Smith, supra, involved an action on a promissory note made, executed, and delivered to a person who a court had determined was incompetent. Such an action in Colorado is classified as a "personal action" and the 6-year statute of limitations is tolled during disability. This statute tolling the statute in personal liability actions is not applicable to the election by a surviving spouse since probate matters are not "personal actions" as listed in the Colorado Revised Statutes. As petitioner points out, the Court noted in Brown v. Smith, supra, that insanity often exists before a person is adjudicated to be insane and therefore a court may determine from the evidence whether the exception of the statute applies to a person prior to his being adjudicated an incompetent. However, the provision in section 153-5-4(2) as to an incompetent spouse does not provide for the tolling of the 6-month time period for making an election. Colorado has provided a specific 6-month limit for *31 the incompetent surviving spouse to elect to take against the will. In our view the March 8, 1968 order issued by the Probate Court was not in accord with Colorado law. Petitioner argues that because of the omission from the provisions of section 153-5-4(2) of the Colorado statutes of the designation of the person to inform the Probate Court that a surviving spouse is incompetent but does not have a conservator, we should not follow the clear language of the Colorado statutes as interpreted by the highest court of Colorado in In re: Sheely's Estate, supra, but should accept the order of the Probate Court as action which was taken because of its failure to exercise independent responsibility to seek out and find a surviving spouse who was "incompetent." Petitioner argues that the Probate Court which was required by statute to appoint a special fiduciary for Elizabeth Goldstein had no notice that one was required but when the Court did receive such notice after the 6-month period for election had elapsed, it did the only reasonable thing by making an election for Elizabeth Goldstein to take the statutory share and entering its order nunc pro tunc within the authorized *32 6-month period. Petitioner is mistaken that the Colorado statutes do not provide for who is to give notice to the Probate Court that a surviving spouse is mentally incompetent. Section 1405 153-5-22(1)(a) [3] provides that upon the presentation for probate of any writing purporting to be the last will of a decedent, such purported will shall be accompanied by a petition for its probate which in addition to such other information as the court may rule or otherwise require, shall set forth the name and address of any heir of the decedent, and the name and address of each legatee, devisee, executor, and trustee named or referred to in such purported will, and which of such persons are under legal disability and the personal representatives of any of them. *33 Section 153-5-22(1)(a) of the Colorado statutes uses the term "legal disability" but does not define the term. While the language of "legal disability" might be stated to literally include only a person who has been declared insane or mentally incompetent in some formal action, certainly, the information of the Probate Court as to there being an incompetent surviving spouse could be expected to come from this source. [4] Clearly, when the context of the provisions of chapter 153 of the Colorado Revised Statutes is considered as a whole, the "incompetent" surviving spouse referred to in section 153-5-4 would be a person under "legal disability" referred to in section 153-5-22(1)(a). Therefore, either it was the duty of the executrix when the will was probated to inform the court of Elizabeth Goldstein's incompetence so that the court could make an election for her under section 153-5-4(2), or Elizabeth Goldstein was not an "incompetent" within the meaning of that section. *34 The order of the Probate Court in fact did not find Elizabeth Goldstein to be "incompetent" but rather found that her failure "to file a petition at an earlier date was without the fault of Elizabeth Goldstein and that the same was caused by and the result of her physical incapacity and mental condition." Therefore, under the order of the Probate Court, section 153-5-4(2) would have no applicability. The Probate Court apparently entered its order because of the representation made to it that knowledge of her right to elect to take one-half of her husband's estate was only recently acquired by Elizabeth Goldstein. The situation here as to Elizabeth Goldstein's lack of knowledge of her right to make an election to take her statutory one-half interest in her husband's estate is no different from the lack of knowledge of the widow in Estate of William John Ahlstrom, supra, who relied heavily on her daughter for advice and counsel. In that case we pointed out that while a contention that such a fact should cause an exception to be made to the time period allowed for making an election was "emotionally appealing," the State law there controlling was to the contrary. In *35 the instant case the law of Colorado is to the contrary of petitioner's contention. In re: Sheely's Estate, supra. We might further add that in considering the order of the Probate Court, we have noted that it was entered in a nonadversary proceeding the day before the day for filing the Federal Estate Tax return. Further, the clear indication from the record is that no property was ever actually distributed to Elizabeth Goldstein but rather her daughter, the petitioner, continued to pay Elizabeth's bills and manager her financial affairs until Elizabeth's death exactly the same after March 8, 1968 as she had done before that date. There is nothing in the record to indicate that Elizabeth Goldstein was ever declared an incompetent or that a conservator was ever appointed for her and the inference from the record is unmistakably clear that neither of these events occurred. The action which was taken in the Probate Court on March 8, 1968, was solely for the purpose of creating a larger marital deduction and in substance, there was no change in the situation of either petitioner or Elizabeth Goldstein as a result of the March 8, 1968 order of the Probate Court. 1405-3
*36 In our view the Supreme Court of Colorado would hold the March 8, 1968 order of the Probate Court invalid and conclude that under the Colorado statutory provisions the surviving spouse had consented to the provisions of the will when she did not within 6 months after the probate of decedent's will exercise her option to elect to receive one-half of decedent's estate. Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954. SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE. (a) Allowance of Marital Deduction. - For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. (b) Limitation in the Case of Life Estate or Other Terminable Interest - (1) General Rule. - Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest - * * * (c) Limitation on Aggregate of Deductions. - (1) General Rule. - The aggregate amount of the deductions allowed under this section (computed without regard to this subsection) shall not exceed 50 percent of the value of the adjusted gross estate, as defined in paragraph (2). * * * (e) Definition. - For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if - * * * (3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent;↩
2. Sec. 153-5-4, Colo. Rev. Stat. Ann. (1963) provide in part: Surviving spouse may elect. - (1) Notwith-standing the provisions of a testator's will, his surviving spouse shall have the option to take and receive one-half of the testator's estate, as provided in section 153-14-10; provided, that such surviving spouse exercises such option by filing in the court in which the testator's will is admitted to probate, within six months thereafter, his election in writing to take and receive one-half of said estate. The failure to exercise such option within said period of six months shall be conclusive evidence of the consent of the surviving spouse to the provisions of such will. (2) If the surviving spouse is incompetent, it shall be the duty of his personal representative, or if he has no personal representative or if the personal representative has an adverse interest, a special fiduciary appointed by the court, to ascertain the value of the benefits provided by the will and the value of the rights secured by statute, which findings shall be reported to the court and hearing had thereon. Notice of the time and place of the hearing shall be given to the surviving spouse, to his personal representative or special fiduciary, if any, and to such other persons and in such manner as the court may direct. After the hearing on the report, the court, within six months from the admission of the will to probate, shall make an election for such spouse to take under the will or under the statute, as the court may find to be more advantageous to such spouse, which election shall be deemed as effectual as if made by a spouse not under disability. * * * (4)(a) Despite the provisions in the last sentence of subsection (1) of this section, if the surviving spouse, or his personal representative, or special fiduciary, shall file with the court a petition alleging that, without fault of the petitioner, he has been unable to secure sufficient information from the court files and other sources available to petitioner to make possible a prudent determination of the advantages or disadvantages of election, and the court finds the allegation in the petition to be true, the court may extend the period within which election may be made by one six-month period. Such petition must be filed at least thirty days prior to the expiration date of the period of time sought to be extended. The court may fix and determine within its discretion the duration of the extended period of time within which the election may be made, except that the extension of time shall not exceed six months. No extension shall be granted under this subsection (4) without a hearing preceded by notice to the personal representative and to such other persons and in such manner as the court may direct, such hearing to be held prior to the expiration date of the period of time sought to be extended.↩
3. Sec. 153-5-22↩ [Colo. Rev. Stat. Ann.]. Petition for probate of will - citation to issue - service appearance. - (1)(a) Upon the presentation for probate of any writing purporting to be the last will of a decedent, such purported will shall be accompanied by a petition for its probate. In addition to such other information as the court may by rule or otherwise require, such petition shall set forth the name and address of any heir of the decedent, and the name and address of each legatee, devisee, executor, and trustee named or referred to in such purported will, and which of such persons are under legal disability, and the personal representatives of any of them, * * *
4. Sec. 153-1-1(7), Rev. Colo. Stat. Ann. (1963), provides that when used in ch. 153 (of which sec. 153-14-10 is of course a part): (7) "Mental incompetent," "incompetent person," "incompetent," or "mentally ill person" denotes a person who has been adjudicated mentally ill or mentally deficient, or who by the laws of this state is designated as a lunatic, insane person, incompetent, mental incompetent, incapable or feeble-minded, or who has been found in an appropriate proceeding to be unable or unfit to manage his own property.↩