ESTATE of William GOLDSTEIN, Deceased, Thelma Zelinger, Executrix, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 72–1319.

United States Court of Appeals, Tenth Circuit.

June 18, 1973.

Gilbert Goldstein, Denver, Colo. (Hoffman, Goldstein & Armour-P.C., Denver, Colo., on the brief), for appellant.

Richard Halberstein, Washington, D. C. (Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Ernest J. Brown, Richard Halberstein, Attys., Tax Div., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before JONES *, SETH and HOLLOWAY, Circuit Judges.

JONES, Circuit Judge:

William Goldstein, a resident of Denver, Colorado, died on December 9, 1966. He left a will dated December 7, 1953, and a codicil thereto dated August 2, 1966. His will provided that, after the payment of debts, funeral expenses and other charges, the remainder of the estate should be held in trust with income payable to his wife, Elizabeth Goldstein, for life with a direction that the trustee should pay to her from principal such sums as were necessary for her support. By the will the testator named David Goldstein as executor and trustee. The codicil substituted Thelma Zelinger as executrix and trustee. On January 3, 1967, the will and codicil were admitted to probate and Thelma Zelinger qualified as executrix. Prior to her husband's death Elizabeth Goldstein had suffered several strokes which rendered her physically incapacitated and mentally incompetent. She was never judicially determined to be incompetent and no guardian was ever appointed for her.

The statute law of Colorado gives to the surviving spouse of a testate decedent the option to take one-half of the decedent's estate. It is provided that the option be exercised by filing a written election within six months after the probate of the will. The failure to exercise the option within the six months period shall, by the terms of the statute, "be conclusive evidence of the consent of the surviving spouse to the provisions of such will." There is a provision that the personal representative, which is defined to include a guardian or conservator, of an incompetent surviving spouse is under a duty to report to the court which, after a hearing, and within six months after probate of the will, shall make an election on behalf of the surviving spouse to take under the will or under the statute. The court is authorized, for cause shown and after notice and hearing, to extend the time for exercising the option to elect for an additional six months period. Colo.Rev.Stat. § 153–5–4.

On April 3, 1967, three months after the will was admitted to probate, the executrix petitioned the probate court for authority to use estate funds for the care of her mother, Elizabeth Goldstein. The executrix filed a Colorado inheritance tax return and paid tax on the basis of a life estate to her mother and a remainder interest in herself in her own right.

Some time prior to March 8, 1968 David Goldstein, a nephew of the decedent who was originally named as his executor and trustee, visited Elizabeth Goldstein and attempted to discuss with her the option to elect to take under or against the provisions of the will of William Goldstein. She was unable to comprehend the explanation given to her and unable to make any decision with respect to the election. She finally told her husband's nephew David to do what-

* Of the Fifth Circuit, sitting by designation.

ever he thought best for her. On March 8, 1968 David Goldstein as next friend of Elizabeth Goldstein filed in the probate court a petition which, among other things, contained the following:

"5. That the said Elizabeth Goldstein suffered a stroke in or about 1958 and since has been and now is physically incapacitated, partially paralyzed, unable to walk, and mentally restricted, although she has not been adjudicated a mental incompetent.

"6. That the said Elizabeth Goldstein had no knowledge or understanding of the time in which to elect pursuant to said 153–5–4, C.R.S., 1963, as amended, and having been advised of such right does desire this Court enter such Petition for election, and requests further that this Court enter an Order allowing her to take and receive one-half of the Testator's Estate as provided in Section 153–5–4, said Order being entered nunc pro tunc June 9, 1967.

"7. That the Petitioner further alleges that said failure to file the Petition was without fault of Elizabeth Goldstein and that due to her mental and physical condition said Elizabeth Goldstein was unable to make a prior prudent determination concerning said election."

On the same day there was filed in the probate court an instrument signed by Elizabeth Goldstein petitioning the court to enter an order requested by David Goldstein and waiving any notice relating thereto. A hearing was held before the probate court at which David Goldstein testified concerning the physical disabilities and the mental incapacity of Elizabeth Goldstein. The court entered an order on the same date as follows:

"1. That Elizabeth Goldstein is the widow of William Goldstein, deceased.

"2. That the said Elizabeth Goldstein is entitled to take and receive one-half of the Testator's Estate as provided in Section 153–14–10, C.R.S., 1963.

"3. That the failure of Elizabeth Goldstein to file a Petition at an earlier date was without the fault of Elizabeth Goldstein, and that the same was caused by and the result of her physical incapacity and mental condition.

"4. That the allegations of the Petition are true and that the determination of Elizabeth Goldstein to take and receive one-half of the Testator's Estate is a prudent determination.

"WHEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that the option of Elizabeth Goldstein to take and receive one-half of the Testator's Estate as provided in said 153–14–10 is hereby ratified, approved, and confirmed, and IT IS SO ORDERED nunc pro tunc June 9, 1967."

On March 8, 1968 the executrix filed the Federal estate tax return claiming the marital deduction of one-half of the decedent's estate. The Commissioner of Internal Revenue disallowed the deduction except as to the value of insurance policies on the decedent's life payable to his widow. A deficiency was assessed on December 23, 1969. The executrix filed a petition with the Tax Court for "redetermination of assessment." Mrs. Goldstein died before the matter was tried in the Tax Court.

In the proceedings before the Tax Court the physical and mental condition of Mrs. Goldstein was established and it was proved that she could not understand the making of an election to take under the statute and against the will of her husband at any time following the husband's death. The Tax Court held that the nunc pro tunc order was not permitted by the law of Colorado. The two 6-month statutory periods terminated on January 3, 1968 more than two months prior to the entry of the nunc pro tunc order. The decision of the Tax Court was in favor of the Commissioner and held that the deficiency was proper. The estate has brought the matter before us for review. The issue here is wheth-

er the order electing against the will is valid.

■■ Although the Federal law fixes the Federal tax incidences of property transfers generated by death, it is the state law that determines the nature of such transfers and the manner by which they are effected. Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; United States v. Mitchell, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406. Since there is no decision of the Supreme Court of Colorado which is controlling upon the issue here presented and no well settled precedents of less authoritative tribunals, we are to determine as best we can the Colorado rule which should be applied in answering the question posed by this appeal. Commissioner v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886.

The Tax Court, in its opinion relied upon Sheely v. Sheely, 102 Colo. 194, 78 P.2d 378, decided in 1938, to sustain its conclusion that the Goldstein marital deduction should be disallowed. The factual situation in the Sheely case was quite different from the case here. In Sheely the decedent's widow, about ten months after the probate of her husband's will, filed a petition in the probate court attempting to elect to take against the will and under the statute. She asserted that she had been induced by undue influence and fraud to postpone her election until after the expiration of the 6-months period. The Colorado trial court resolved the fact issues of fraud and undue influence against the widow and the Colorado Supreme Court held that this finding was binding upon it and upon the widow.

In its opinion the Colorado court stated:

"We know of no valid reason for regarding the provision as merely directory. To do so would apparently violate the emphatic language used, and be equivalent to judicial legislation, which is beyond our lawful power." 78 P.2d at 379.

This dictum, and such it clearly is, was modified by the statement that "the question whether undue influence or fraud can ever repeal or suspend the statutory limitation of six months for filing a widow's election is not before us." Id.

■ Dicta alone, while entitled to consideration, is not of itself an authoritative expression of the law of the state. 1A Moore's Federal Practice 3313, Par. 3.07 [2]. Three of the seven judges of the court deciding the Sheely case concurred in the trial court's ruling on the widow's election but dissented as to the remainder of the opinion. This results in a further dilution of the persuasive effect, if any, of Sheely.

The Sheely case refers to the "statutory limitation of six months." In a later decision it was stated that "legislative acts of this character are simply statutes of limitation fixing a definite time after which an election, if filed, cannot be considered." In re Stitzer's Estate, 103 Colo. 529, 87 P.2d 745.

It is appropriate, then, to consider whether the statutory period of six months has been tolled or otherwise extended under Colorado law for the benefit of Mrs. Goldstein by reason of her mental condition. The section of the Colorado Revised Statutes creating the right of election and the built-in modifications of it is:

"153–5–4. Surviving spouse may elect.—(1) Notwithstanding the provisions of a testator's will, his surviving spouse shall have the option to take and receive one-half of the testator's estate, as provided in section 153–14–10; provided, that such surviving spouse exercises such option by filing in the court in which the testator's will is admitted to probate, within six months thereafter, his election in writing to take and receive one-half of said estate. The failure to exercise such option within said period of six months shall be conclusive evidence of the consent of the surviving spouse to the provisions of such will.

"(2) If the surviving spouse is incompetent, it shall be the duty of his personal representative, or if he has no personal representative or if the personal representative has an adverse interest, a special fiduciary appointed by the court, to ascertain the value of the benefits provided by the will and the value of the rights secured by statute, which findings shall be reported to the court and hearing had thereon. Notice of the time and place of the hearing shall be given to the surviving spouse, to his personal representative or special fiduciary, if any, and to such other persons and in such manner as the court may direct. After the hearing on the report, the court, within six months from the admission of the will to probate, shall make an election for such spouse to take under the will or under the statute, as the court may find to be more advantageous to such spouse, which election shall be deemed as effectual as if made by a spouse not under disability.

"(3) If an election is made as provided in this section, the executor or administrator with the will annexed shall have the same powers with respect to the administration of all property of the testator's estate as if the election had not been made.

"(4)(a) Despite the provisions in the last sentence of subsection (1) of this section, if the surviving spouse, or his personal representative, or special fiduciary, shall file with the court a petition alleging that, without fault of the petitioner, he has been unable to secure sufficient information from the court files and other sources available to petitioner to make possible a prudent determination of the advantages or disadvantages of election, and the court finds the allegation in the petition to be true, the court may extend the period within which election may be made by one six-month period. Such petition must be filed at least thirty days prior to the expiration date of the period of time sought to be extended. The court may fix and determine within its discretion the duration of the extended period of time within which the election may be made, except that the extension of time shall not exceed six months. No extension shall be granted under this subsection (4) without a hearing preceded by notice to the personal representative and to such other persons and in such manner as the court may direct, such hearing to be held prior to the expiration date of the period of time sought to be extended.

"(b) This subsection (4) shall be applicable to the estates of all decedents dying after the effective date of this subsection (4)."

Several of the terms used in the Chapter of the Colorado statutes, of which the foregoing is a part have been construed by the legislature. Among the statutory definitions is the following:

" 'Mental incompetent,' 'incompetent person,' 'incompetent,' or 'mentally ill person' denotes a person who has been adjudicated mentally ill or mentally deficient, or who by the laws of this state is designated as a lunatic, insane person, incompetent, mental incompetent, incapable or feeble-minded, or who has been found in an appropriate proceeding to be unable or unfit to manage his own property." Colo.Rev. Stat. § 153–1–1(7).

The reference to a person who by the laws of the state is designated as, among others, incompetent requires a look at the chapter relating to Insane and other Mental Defectives where the section containing definitions provides:

"(a) As used in this article and wherever now or hereafter used in the statutes of the state of Colorado according to their context, the following terms shall have the following meanings:

"(b) 'Mentally ill person' shall mean a person afflicted with disease, infirmity, old age, or disorder, which impairs his mental or emotional functions to a degree sufficient to require

protection, supervision, treatment, or confinement, for his own welfare or for the welfare or safety of others, or who, by reason thereof, lacks sufficient control, judgment, and discretion to manage his own property or affairs. The terms, 'insane person,' 'mental incompetent' or 'lunatic,' shall hereafter be deemed to mean and be included within the words, 'mentally ill person,' within the present statutes of the state of Colorado, unless context otherwise indicates a mentally deficient person." Colo.Rev.Stat. § 71–1–1–(1).

It seems that there can be no question but that Elizabeth Goldstein was an incompetent at the time of her husband's death and her condition did not change. She had no personal representative who might have made an election on her behalf. Although the executrix-trustee, who was Goldstein's daughter, had petitioned the probate court for approval of the use of estate funds for her mother's care, there was nothing in the petition nor elsewhere in the probate court proceedings which could have generated the appointment of a special fiduciary to act with respect to her election. Since the executrix-trustee was not the personal representative of her mother, no consideration need be given as to whether she had an interest as the remainderman of the trust which was adverse to her mother. Two 6-month periods after the probate of the will had elapsed and nothing had happened with respect to an election by Mrs. Goldstein except the running of time.

The Commissioner reminds the Court of the dictum in Sheely, supra, that the provisions of the election statute are mandatory and not merely directory. It has been noted that the difference between mandatory and directory statutes involves a matter of degree instead of separate, mutually exclusive characteristics. 1A Sands, Sutherland Statutory Construction 301, § 25.04. It is to be remembered that in Sheely the gate was left ajar for a judicial determination

that a valid election might be made out of time under justifiable circumstances. The time and manner of the making of an election by one in Mrs. Goldstein's situation are not expressly covered by the statute. The Commissioner would hold her to the letter of the law as though she had no mental affliction. We do not believe the Colorado courts would agree. "The obvious purpose of the statute," according to the Supreme Court of Colorado, "is to assure timely notice to the court, to those in charge of the administration of the estate, and to all persons interested therein, that the surviving spouse is dissatisfied with the will and elects to take and receive one-half of the estate under the statute." In re Stitzer's Estate, 103 Colo. 529, 87 P. 2d 745. None who were entitled to notice were prejudiced by the delay in the making of the election. The United States was not prejudiced, if in any event it could have been, as the election was made before, although but one day before, the date for the filing of the estate tax return. The only prejudice was to the revenue.

Another section of the Colorado Statutes was enacted in the language following:

"(a) Whenever in any of the statutes of the state of Colorado heretofore or hereafter enacted, a limitation is fixed upon the time within which a right of action, right of redemption, or any other right, may be asserted either affirmatively or by way of defense, or an action, suit or proceeding based thereon, may be brought, commenced, maintained or prosecuted, and the true owner of said right is a person under disability at the time such right accrues, then:

"(b) If such person under disability is represented by a legal representative at the time said right accrues, or if a legal representative is appointed for such person under disability at any time after said right accrues and prior to the termination of such disability, the applicable statute of limi-

tations shall run against such person under disability in the same manner, for the same period, and with the same effect as it runs against persons not under disability. Such legal representative, or his successor in trust, in any event shall be allowed not less than two years after his appointment within which to take action on behalf of such person under disability, even though such two year period shall expire after the expiration of the period fixed by the applicable statute of limitations." Colo.Rev.Stat. § 87–2–3(1).

Mrs. Goldstein's right of election was a right which "may be asserted" and the statutory fixing of the time for asserting it was a "limitation upon the time" for asserting it. It seems that Mrs. Goldstein's right of election was extant at the time it was asserted and exercised. Whether it would have been existing so as to permit an estate tax marital deduction if it had been exercised two days later after the time for filing an estate tax return is a question we need not consider. This conclusion is supported by decisions of the Colorado Supreme Court relieving incompetents, whether or not so adjudicated, and whether or not having a legal representative, from the bar of a statutory time limitation.

The Colorado courts are disposed to treat incompetents with all due regard for their condition, whether or not they have been adjudicated incompetent. For example, in Hunter v. Williams, 96 Colo. 435, 44 P.2d 509, the court excused an incompetent from laches and relieved him from the operation of limitations. Similarly in Browne v. Smith, 119 Colo. 469, 205 P.2d 239, the court held that the statute of limitations in an action to recover on a promissory note was tolled by the plaintiff's incompetence, even though there had been no adjudication of incompetence during the period in question. In Klamm Shell v. Berg, 165 Colo. 540, 441 P.2d 10, the court held that the statute of limitations was tolled even though the incompetence did not

arise until after the tort in issue had been committed, thereby fashioning an equitable exception to the statutory rule requiring that insanity exist at the time the cause of action accrues for the dire circumstances of that case. The Court, in Colorado Springs v. Colburn, 102 Colo. 483, 81 P.2d 397, excused failure to give notice of an injury to a city within the time fixed by statute because of the physical and mental incapacity of the plaintiff. While the cited cases may be distinguished in one way or another from the case now before this Court, they nonetheless demonstrate that the Colorado court has not hesitated to grant relief from time requirements imposed by statute of mentally incompetent persons. The conclusions here reached are not in conflict with Jacob v. City of Colorado Springs, Colo., 485 P.2d 889; Weidensaul v. Industrial Commission, 107 Colo. 28, 108 P.2d 234.

Not all jurisdictions would decide the question as we believe Colorado would decide it. See Annotation, Time within which Election must be made to take under or against Will, 3 A.L.R.3d 119. The line of cleavage seems to be between strict and liberal attitudes toward the problem. We align Colorado with those which adhere to the latter. Other decisions adopting similar views are Wolcott v. Wolcott, Miss., 184 So.2d 381; In re Hansen's Guardianship, 67 Utah 256, 247 P. 481, and Gaster v. Gaster, 90 Neb. 529, 134 N.W. 235.

■ The order of the probate court provided that it should be entered nunc pro tunc. It is immaterial whether the order, by its terms, related back so as to make it effective within the statutory time period, or that the order declare that the time is enlarged. This is not the kind of situation where substance yields to form. The election made for Mrs. Goldstein to take one-half of her husband's estate is a valid one.

It follows that the decision of the Tax Court is reversed and the cause remanded for the entry of an appropriate order providing for the allowance of the mari-

tal deduction computed after giving effect to the election. It is not to be assumed that any general statement herein is the pronouncement of a broad principle. It is intended to decide the particular case on its peculiar facts and no more.

Reversed and remanded.